# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| HADIT SANTANA and VANESSA VIGIL, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>Defendant. | 15 Civ. _____<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Hadit Santana and Vanessa Vigil, individually and on behalf of all others similarly situated, bring this Class Action Complaint for violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. 14/1 to 14/99 (West, Westlaw through P.A. 99-324 of 2015 Reg. Sess.), against Take-Two Interactive Software, Inc. ("Take-Two"), and allege as follows based on personal knowledge as to themselves, on the investigation of their counsel and the advice and consultation of certain third-party agents as to technical matters, and on information and belief as to all other matters, and demand trial by jury:

## NATURE OF ACTION

1. Take-Two is a publisher, developer and distributor of numerous video games, including the "NBA 2K15" and "NBA 2K16" video games for the Sony PlayStation 4 and Microsoft Xbox One gaming platforms. Plaintiffs bring this action for damages and other legal and equitable remedies resulting from the illegal actions of Take-Two in collecting, storing, using, disclosing and disseminating Plaintiffs' and other similarly situated individuals' biometric identifiers[1]

---

[1] A "biometric identifier" is any personal feature that is unique to an individual, including fingerprints, iris scans and "face geometry", among others. 740 Ill. Comp. Stat. 14/10.

and biometric information[2] (referred to collectively at times as "biometrics") without informed written consent, in violation of the BIPA.

2. The Illinois Legislature has found that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information." 740 Ill. Comp. Stat. 14/5(c). "For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." *Id.*

3. In recognition of these concerns over the security of individuals' biometrics – particularly in the City of Chicago, which was selected by major national corporations as a "pilot testing site[] for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias," 740 Ill. Comp. Stat. 14/5(b) – the Illinois Legislature enacted the BIPA, which provides, *inter alia*, that a private entity like Take-Two may not obtain and/or possess an individual's biometrics unless it: (1) informs that person in writing that biometric identifiers or information will be collected or stored, *see id.*; (2) informs that person in writing of the specific purpose and length of term for which such biometric identifiers or biometric information is being collected, stored and used, *see id.*; (3) receives a written release from the person for the collection of his or her biometric identifiers or information, *see id.*; and (4) publishes publically available written retention schedules and guidelines for permanently destroying biometric identifiers and biometric information, *see* 740 Ill. Comp. Stat. 14/15(a).

4. In violation of each of the foregoing provisions of sections 15(a) and 15(b) of the BIPA, Take-Two is actively collecting, storing and using – without providing adequate notice,

---

[2] "Biometric information" is any information captured, converted, stored or shared based on a person's biometric identifier used to identify an individual. 740 Ill. Comp. Stat. 14/10.

receiving informed written consent or publishing data retention policies – the biometrics of thousands of Illinois residents.

5. Specifically, Take-Two has created, collected and stored "scans of face geometry" (or "face templates") – highly detailed geometric maps of the face – from thousands of Illinois residents who used the "PS4 Camera" and/or the "Xbox One Kinect camera" in connection with the NBA 2K15 and/or NBA 2K16 video game(s) to create a player with a personally identifying facial rendition. Take-Two creates these templates and renditions with sophisticated, proprietary face scanning technology that uses the "PlayStation 4 Camera" and the "Xbox One Kinect camera" to extract and analyze data from the points and contours of the faces of individuals who play NBA 2K15 and/or NBA 2K16. Each face template, on which each rendition is based, is unique to a particular individual, in the same way that a fingerprint or voiceprint uniquely identifies one and only one person.

6. Plaintiffs bring this action individually and on behalf of all others similarly situated to prevent Take-Two from further violating the privacy rights of Illinois residents, and to recover statutory damages for Take-Two's unauthorized collection, storage, use, disclosure and dissemination of biometrics in violation of the BIPA.

## PARTIES

7. Plaintiff Hadit Santana is, and has been at all relevant times, a resident and citizen of Chicago, lllinois.

8. Plaintiff Vanessa Vigil is, and has been at all relevant times, a resident and citizen of Chicago, lllinois.

9. Take-Two is a Delaware corporation with its headquarters and principal place of business in New York, New York. Take-Two is a citizen of the states of Delaware and New York.

## JURISDICTION AND VENUE

10. Subject matter jurisdiction is proper in this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), because: (i) the proposed class consists of well over 100 members; (ii) the parties are minimally diverse, as members of the proposed class, including Plaintiffs, are citizens of a state different from Take-Two's home states; and (iii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. There are likely tens of thousands of individuals who, while residing in Illinois, had their scans of face geometry and personally identifying information based on their scans of face geometry collected by Take-Two. The estimated number of individuals residing in Illinois who were impacted by Take-Two's conduct multiplied by BIPA's statutory liquidated damages figure ($5,000 for each intentional or reckless violation and $1,000 for each negligent violation) easily exceeds CAFA's $5,000,000 threshold.

11. This Court has personal jurisdiction over Take-Two because Take-Two maintains its corporate headquarters and principal place of business in New York, New York.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Take-Two maintains its corporate headquarters and principal place of business in this District.

## FACTUAL BACKGROUND

### I. Biometric Technology Implicates Consumer Privacy Concerns

13. "Biometrics" refers to unique physical characteristics used to identify an individual. One of the most prevalent uses of biometrics is in facial recognition technology, which works by scanning an image of a human face (or scanning an actual person's face), extracting facial-feature data based on specific "biometric identifiers" (i.e., details about the face's geometry as determined by facial points and contours), and comparing the resulting "face template" (or "faceprint") against the face templates stored in a "face template database." If a database match is found, an individual may be identified.

4

14. Facial recognition technology is capable of using biometric identifiers and information in ways that present numerous privacy concerns. During a 2012 hearing before the United States Senate Subcommittee on Privacy, Technology, and the Law, Senator Al Franken expressed concern that facial recognition technology could be "abused in ways that could threaten basic aspects of our privacy and civil liberties."[3] Senator Franken noted, for example, that facial recognition technology could be "abused to not only identify protesters at political events and rallies, but to target them for selective jailing and prosecution."[4]

15. The Federal Trade Commission ("FTC") has raised similar concerns, and recently released a "Best Practices" guide for companies using facial recognition technology.[5] In the guide, the Commission underscores the importance of companies' obtaining affirmative, informed consent from consumers before extracting and collecting their biometric identifiers and biometric information.

16. As explained below (*see infra* Part III), Take-Two failed to obtain adequate consent from Plaintiffs or the putative class members before collecting, storing, using, disclosing or disseminating their biometric identifiers and information through the NBA 2K15 and NBA 2K16 video games. Not only do Take-Two's actions fly in the face of FTC guidelines, they also violate the privacy rights of Illinois residents.

---

[3] *What Facial Recognition Technology Means for Privacy and Civil Liberties: Hearing Before the Subcomm. on Privacy, Tech. & the Law of the S. Comm. on the Judiciary*, 112th Cong. 1 (2012), *available at* http://www.franken.senate.gov/?p=press_release&id=2144.

[4] *Id.*

[5] *Facing Facts: Best Practices for Common Uses of Facial Recognition Technologies*, Federal Trade Commission (Oct. 2012), *available at* http://www.ftc.gov/sites/default/files/documents/reports/facing-facts-best-practices-common-uses-facial-recognition-technologies/121022facialtechrpt.pdf.

5

**II.     Illinois's Biometric Information Privacy Act**

17.     In 2008, Illinois enacted the BIPA due to the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information." Ill. House Tr., 2008 Reg. Sess. No. 276. The BIPA makes it unlawful for a company to, inter alia, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers[6] or biometric information, unless it first:

> (l) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 Ill. Comp. Stat. 14/15(b).

18.     Section 15(a) of the BIPA also provides:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 Ill. Comp. Stat. 14/15(a).

19.     Section 15(d) of the BIPA also provides that '[n]o private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric" without written consent. 740 Ill. Comp. Stat. 14/15(d).

---

[6] The BIPA's definition of "biometric identifier" expressly includes "scans of face geometry." *See* 740 Ill. Comp. Stat. 14/10.

20. As alleged below (*see infra* Part III), Take-Two's practices of collecting, storing, using, disclosing and disseminating biometric identifiers and information without informed written consent violate all three prongs of section 15(b) of the BIPA. Take-Two's disclosure and dissemination of biometric identifiers and information violates section 15(d) of the BIPA. Take-Two's failure to provide a publicly available written policy regarding their schedule and guidelines for the retention and permanent destruction of biometric identifiers and information also violates section 15(a) of the BIPA.

### III. Take-Two Violates the Biometric Information Privacy Act

21. To provide a realistic animation in which a game player himself or herself appears to compete in an NBA basketball game with NBA players, the "MyPlayer" feature of NBA 2K15 and NBA 2K16 allows gamers to create a personalized basketball player that has a 3-D rendition of the gamer's face.

22. When MyPlayer is first used, the gamer is presented with a screen that states:

> Your face scan will be visible to you and others you play with and may be recorded or screen captured during gameplay. By proceeding you agree and consent to such uses and other uses pursuant to the End User License Agreement.
> www.take2games.com/eula

If the gamer presses "Continue," the gamer is permitted access to the face scanning feature of MyPlayer. As discussed below, this screen fails to disclose Take-Two's most invasive use of the face scans and renditions created in MyPlayer, which is their indefinite storage on Take-Two servers.

23. Using the cameras connected to the gaming platforms on which NBA 2K15 and NBA 2K16 operate, the 3-D mapping process captures a scan of the gamer's face geometry, which is then used to disseminate a realistic, personally identifying facial rendition of the gamer's face during multiplayer game play. Gamers need to get very close (6-12 inches) to the camera and slowly

7

turn their heads 30 degrees to the left and to the right during the scanning process. The process of scanning the face takes about 15 minutes.

24. The scanning process results in Take-Two's proprietary technology extracting geometric data relating to the unique points and contours of each face. These scans of face geometry that Take-Two collects from gamers constitute biometric identifiers under section 14/10 of the BIPA. *See* 740 Ill. Comp. Stat. 14/10 (defining "biometric identifier" to mean, inter alia, a "scan of . . . face geometry").

25. Take-Two then uses the scans of face geometry to disseminate realistic, personally identifying, animated renditions of the faces during multiplayer game play. These renditions constitute "information . . . based on an individual's biometric identifier," 740 Ill. Comp. Stat. 14/10, and are therefore "biometric information" under the BIPA, *id.*

26. Take-Two fails to "inform[] the subject . . . in writing that a biometric identifier or biometric information is being collected or stored." 740 Ill. Comp. Stat. 14/15(b)(1). Take-Two does not inform gamers in writing that their face scans (biometric identifiers) are being collected or stored. Take-Two thus violates section 15(b)(1) of the BIPA.

27. Take-Two fails to "inform[] the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used." *Id.* 14/15(b)(2). Take-Two does not inform gamers in writing of the specific purpose and length of term for which their face scans (biometric identifiers) are being collected, stored and used. Take-Two thus violates section 15(b)(2) of the BIPA.

28. Take-Two fails to "receive[] a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative." *Id.* 14/15(b)(3). Take-Two does not receive a written release executed by gamers who are the subjects

of the face scans (biometric identifiers) and animated renditions (biometric information). Take-Two thus violates section 15(b)(3) of the BIPA.

29. Take-Two "disclose[s], rediscloses[s], or otherwise disseminate[s] . . . biometric identifier[s] or biometric information" without obtaining the consent of "the subject of the biometric identifier or biometric information or the subject's legally authorized representative[.]" *Id.* 14/15(d). Take-Two discloses and disseminates facial renditions (biometric information), which are based on scans of face geometry (biometric identifiers), during multiplayer game play. Take-Two thus violates section 15(d) of the BIPA.

30. Take-Two has failed to develop a written, publicly available policy "establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." *Id.* 14/15(a). To the contrary, Take-Two indefinitely stores each gamer's face scan (biometric identifier) on Take-Two's remote server for use and dissemination, in the form of a facial rendition (biometric information), during multiplayer game play. Take-Two has no retention schedule or guidelines for statutorily compliant, permanent destruction of such biometric information and biometric identifiers, much less a written, publicly available policy establishing such a schedule or guidelines. Take-Two thus violates section 15(a) of the BIPA.

**IV.  The Experiences of Plaintiffs Hadit Santana and Vanessa Vigil**

31. Plaintiff Hadit Santana purchased and played the NBA 2K15 video game in Illinois on a PlayStation 4 that she purchased, installed and otherwise set up in Illinois.

32. Plaintiff Vanessa Vigil played the NBA 2K15 video game in Illinois on a PlayStation 4 that her brother, also an Illinois resident, purchased, installed and otherwise set up in Illinois.

9

33. Both Plaintiffs used the MyPlayer feature during the course of their game play on NBA 2K15. Before using MyPlayer, each Plaintiff pressed "Continue" when presented with the screen stating that "[y]our face scan will be visible to you and others you play with and may be recorded or screen captured during gameplay."

34. Unaware of the true nature of Take-Two's face scanning technology, including its storage of scans of face geometry on a remote server, Plaintiffs each used the PlayStation Camera to create a scan of face geometry for use during multiplayer game play. Each Plaintiff was instructed by the game to look directly into the PlayStation Camera, at which point the PlayStation Camera and the game scanned and analyzed each Plaintiff's face and extracted each of their biometric identifiers in the form of "scans of face geometry" (or "face templates"), comprised of geometric data relating to, inter alia, the unique contours of each Plaintiff's face and the distances between each Plaintiff's eyes, nose and ears.

35. Take-Two stored the resulting face templates on its remote server.

36. Take-Two then created a personally identifying rendition (biometric information) of each Plaintiff's face using their face templates (biometric identifiers), and then disseminated those facial renditions during multiplayer game play.

37. Each Plaintiff subsequently entered a multiplayer game, at which point each Plaintiff's facial rendition, *i.e.* biometric information, was disclosed and disseminated to other players.

38. Neither Plaintiff was informed by Take-Two in writing that a biometric identifier or biometric information was being collected or stored.

39. Neither Plaintiff was informed by Take-Two in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used.

40. Neither Plaintiff, nor any legally authorized representative of either Plaintiff, executed or delivered to Take-Two a written release with respect to the collection, storage, use, dissemination or disclosure of biometric identifiers or biometric information.

41. Take-Two has no written, publicly available policy establishing a retention schedule and guidelines for permanently destroying, in a statutorily compliant manner, Plaintiffs' biometric identifiers and biometric information.

## CLASS ALLEGATIONS

42. **Class Definition**: Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

> All individuals users who, while residing in the State of Illinois, and while playing, using or otherwise interacting with the "NBA 2K15" and/or "NBA 2K16" video game(s), had their biometric identifiers, including "scans of face geometry" (or "face templates"), and/or biometric information, including personally identifying renditions of faces based on "face templates," collected, captured, received, or otherwise obtained and/or stored, and/or disclosed or disseminated, by Take-Two without (1) being informed by Take-Two in writing that a biometric identifier or biometric information was being collected or stored, (2) being informed by Take-Two in writing of the specific purpose and length of term for which a biometric identifier or biometric information was being collected, stored, and used, (3) delivering to Take-Two an executed release pertaining to biometric identifiers and biometric information, and/or (4) Take-Two's establishment of a written, publicly available policy establishing a retention schedule and guidelines for permanently destroying, in a statutorily compliant manner, biometric identifiers and biometric information.

The following are excluded from the Class: (1) any Judge presiding over this action and members of their family; (2) Take-Two, Take-Two's subsidiaries, parents, successors, predecessors, and any entity in which Take-Two or its parent has a controlling interest (as well as current or former employees, officers and directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on

the merits or otherwise released; (5) Plaintiffs' counsel and Take-Two's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

43. **Numerosity**: The number of persons within the Class is substantial, believed to amount to thousands of persons. It is, therefore, impractical to join each member of the Class as a named Plaintiff. Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical. Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.

44. **Commonality and Predominance**: There are well defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from Class member to Class member, and which may be determined without reference to the individual circumstances of any class member include, but are not limited to, the following:

   (a) whether Take-Two collected or otherwise obtained Plaintiffs' and the Class's biometric identifiers or biometric information;

   (b) whether Take-Two properly informed Plaintiffs and the Class that Take-Two collected or stored their biometric identifiers or biometric information;

   (c) whether Take-Two properly informed Plaintiffs and the Class of the specific purpose and length of term for which Take-Two collected, stored, and used their biometric identifiers or biometric information;

   (d) whether Take-Two obtained a written release (as defined in 740 Ill. Comp. Stat. 14/10) to collect, use, store, disclose or disseminate Plaintiffs' and the Class's biometrics identifiers or biometric information;

   (e) whether Take-Two developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometrics information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of their last interaction, whichever occurs first;

   (f) whether Take-Two used Plaintiffs' and the Class's biometric identifiers or biometric information to identify them; and

(g) whether Take-Two's violations of the BIPA were committed intentionally, recklessly, or negligently.

45. **Adequate Representation**: Plaintiffs have retained and are represented by qualified and competent counsel who are highly experienced in complex consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this class action. Neither of the Plaintiffs nor their counsel has any interest adverse to, or in conflict with, the interests of the absent members of the Class. Plaintiffs are able to fairly and adequately represent and protect the interests of such a Class. Plaintiffs have raised viable statutory claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims. If necessary, Plaintiffs may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

46. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable. Even if every member of the Class could afford to pursue individual litigation, the Court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system and protects the rights of each member of the Class. Plaintiffs anticipate no difficulty in the management of this action as a class action. Class wide relief is essential to compel compliance with the BIPA.

# FIRST CAUSE OF ACTION
## Violation of 740 Ill. Comp. Stat. 14/1 to 14/99
### (On Behalf of Plaintiffs and the Class)

47. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

48. The BIPA makes it unlawful for any private entity to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and (3) receives a written release executed by the subject of the biometric identifier or biometric information." 740 Ill. Comp. Stat. 14/15(b). The BIPA also makes it unlawful for any private entity to, among other things, "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information." 740 Ill. Comp. Stat. 14/15(d).

49. Take-Two is a Delaware corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 Ill. Comp. Stat. 14/10.

50. Plaintiffs and the Class members are individuals who had their "biometric identifiers" (specifically, scans of face geometry) collected, stored and used by Take-Two. *See* 740 Ill. Comp. Stat. 14/10.

51. Plaintiffs and the Class members are individuals who had their "biometric information" (specifically, personally identifying facial renditions based on scans of face geometry) collected, stored and used by Take-Two.

52. Take-Two failed to properly inform Plaintiffs or the Class in writing that their biometric identifiers and/or biometric information was being collected and stored, nor did they inform Plaintiffs or the Class members in writing of the specific purpose and length of term for

14

which their biometric identifiers and/or biometric information was being collected, stored, and used, as required by 740 Ill. Comp. Stat. 14/15(b)(1)-(2).

53. Take-Two systematically and automatically collected, stored and used Plaintiffs' and the Class members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 Ill. Comp. Stat. 14/15(b)(3).

54. In addition, Take-Two does not publicly provide a retention schedule or guidelines for permanently destroying the biometric identifiers and/or biometric information of Plaintiffs or the Class members, as required by the BIPA. *See* 740 Ill. Comp. Stat. 14/15(a).

55. Take-Two systematically and automatically disclosed and disseminated Plaintiffs' and the Class members' biometric information without first obtaining adequate consent required by 740 Ill. Comp. Stat. 14/15(d)(1)-(3).

56. By collecting, storing, using, disclosing and disseminating Plaintiffs' and the Class's biometric identifiers and biometric information as described herein, Take-Two violated the rights of Plaintiffs and each Class member to keep private these biometric identifiers and biometric information, as set forth in the BIPA, 740 Ill. Comp. Stat. 14/1 to 14/99.

57. On behalf of themselves and the proposed Class members, Plaintiffs seek: (1) injunctive and equitable relief as is necessary to protect the interests of Plaintiffs and the Class by requiring Take-Two to comply with the BIPA's requirements for the collection, storage, use, disclosure and dissemination of biometric identifiers and biometric information as described herein; (2) statutory damages of $5,000.00 for the intentional and reckless violation of the BIPA pursuant to 740 Ill. Comp. Stat. 14/20(2), or alternatively, statutory damages of $1,000.00 pursuant to 740 Ill. Comp. Stat. 14/20(1) if the Court finds that Take-Two's violations were negligent; and (3) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 Ill. Comp. Stat. 14/20(3).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Hadit Santana and Vanessa Vigil, on behalf of themselves and the proposed Class, respectfully request that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiffs as representatives of the Class, and appointing their counsel as Class Counsel;

B. Declaring that Take-Two's actions, as set out above, violate the BIPA, 740 Ill. Comp. Stat. l4/1.

C. Awarding statutory damages of $5,000.00 for each and every intentional and reckless violation of the BIPA pursuant to 740 Ill. Comp. Stat. 14/20(2), or alternatively, statutory damages of $1,000.00 pursuant to 740 Ill. Comp. Stat. 14/20(1) if the Court finds that Take-Two's violations were negligent;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, including, inter alia, an order requiring Take-Two to collect, store, and use biometric identifiers or biometric information only in compliance with the BIPA;

E. Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

Dated: October 19, 2015

Respectfully submitted,

By: /s/ John C. Carey

**CAREY RODRIGUEZ
MILIAN GONYA, LLP**

John C. Carey (NY Bar No. JC-4639)
jcarey@careyrodriguez.com
David P. Milian*
dmilian@careyrodriguez.com
Frank S. Hedin*
fhedin@careyrodriguez.com
Ernesto M. Rubi*
erubi@careyrodriguez.com
1395 Brickell Avenue, Suite 700
Miami, Florida 33131
Telephone: (305) 372-7474
Facsimile: (305) 372-7475

*Pro Hac Vice Application Forthcoming*

**Counsel for Plaintiffs and the Putative Class**