UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RICARDO VIGIL and VANESSA VIGIL, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

Defendant.

Civil Action 1:15-cv-08211

**DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..... 1

FACTS RELEVANT TO THE MOTION ..... 2

ARGUMENT ..... 5

I. Plaintiffs Lack Article III Standing to Sue on Behalf of Themselves or a Class ..... 6

II. Plaintiffs Have Not Stated a Claim Under BIPA Because They Do Not Allege They Have Been "Aggrieved" ..... 10

CONCLUSION ..... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amburgy v. Express Scripts, Inc.*,
671 F.Supp.2d 1046 (E.D.Mo.2009)................................................................ 7

*Doe v. Chao*,
540 U.S. 614 (2004)......................................................................... 10, 12, 13

*Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*,
No. CV 15-04767-AB (JCX),
2015 WL 6579779 (C.D. Cal. Oct. 19, 2015).............................................................. 8

*Hammond v. Bank of N.Y. Mellon Corp.*,
2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ....................................... 6, 7

*Howell v. Grindr, LLC*,
No. 15cv1337-GPC(NLS),
2015 WL 9008801 (S.D. Cal. Dec. 15, 2015)............................................................ 10

*In re Colony Hill Associates*,
111 F.3d 269 (2d Cir. 1997)......................................................................... 11

*In re Facebook Internet Tracking Litig.*,
No. 5:12-MD-02314-EJD,
2015 WL 6438744 (N.D. Cal. Oct. 23, 2015).............................................................. 7

*In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*,
797 F.3d 148, 157 (2d Cir. 2015)................................................................. 10

*Lleshi v. Kerry*,
No. 14-cv-7412,
2015 WL 5143982 (S.D.N.Y. Sept. 1, 2015)............................................................. 5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)......................................................................................... 6

*MAI System Corp. v. UIPS*,
856 F. Supp. 538 (N.D. Cal. 1994) ....................................................................... 9

*Makarova v. U.S.*,
201 F.3d 110 (2d Cir. 2000)........................................................................... 5

*Mangini v. R.J. Reynolds Tobacco Co.*,
793 F. Supp. 925 (N.D. Cal. 1992) ....................................................................... 9

**Page(s)**

*Marshel v. AFW Fabric Corp.*,
552 F.2d 471 (2d Cir.1977)........................................................................................ 7

*Mortera v. N. Am. Mortgage Co*.,
172 F. Supp. 2d 1240 (N.D. Cal. 2001) ........................................................................ 9

*Nat'l Council of La Raza v. Gonzales*,
468 F. Supp. 2d 429 (E.D.N.Y. 2007) .......................................................................... 7

*Padilla v. Dish Network L.L.C.*,
No. 12-CV-7350,
2013 WL 3791140 (N.D. Ill. July 19, 2013)............................................................. 11

*Randolph v. ING Life Ins. & Annuity Co.*,
486 F. Supp. 2d 1 (D.D.C. 2007).................................................................................. 7

*Robainas v. Metro. Life Ins. Co.*,
No. 14CV9926 DLC,
2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015).............................................................. 11

*Robins v. Spokeo, Inc*.,
742 F.3d 409 (9th Cir. 2014)
*cert. granted*, 135 S. Ct. 1892 (2015) ...................................................................... 7, 8

*Ross v. AXA Equitable Life Ins. Co.*,
No. 14-CV-2904 JMF,
2015 WL 4461654 (S.D.N.Y. July 21, 2015) ............................................................. 8

*Salvatore v. Microbilt Corp.*,
No. 4:14-CV-1848,
2015 WL 5008856 (M.D. Pa. Aug. 20, 2015) ............................................................. 8

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998)...................................................................................................... 10

*Toxic Injuries Corp. v. Safety-Kleen Corp*.,
57 F. Supp. 2d 947 (C.D. Cal. 1999) ........................................................................... 9

*Warth v. Seldin*,
422 U.S. 490 (1975)...................................................................................................... 8

*Wojchowski v. Daines*,
498 F.3d 99 (2d Cir. 2007)....................................................................................... 5, 10

**Statutes**

220 Ill. Comp. Stat. Ann. 5/22-501........................................................................... 12

**Page(s)**

5 U.S.C. § 552a(g)(4)(A) ........................................ 12

740 Ill. Comp. Stat. 14/15 ........................................ 2

740 Ill. Comp. Stat. 14/20 ........................................ 3, 10, 12

740 Ill. Comp. Stat. 14/5 ........................................ 1, 2, 3

**Other Authorities**

Fed. R. Civ P. 12(b)(6) ........................................ 2, 5, 10, 13

Fed. R. Civ. P. 12(b)(1) ........................................ 2, 5, 6, 9

**Rules**

BLACK'S LAW DICTIONARY
(9th ed. 2009) ........................................ 11

## INTRODUCTION

As discussed with the Court at the January 12 pre-filing conference, Ricardo Vigil and Vanessa Vigil ("Plaintiffs") have no standing to pursue their claim. The Court should dismiss the First Amended Complaint (the "FAC"), with prejudice,[1] under Rule 12(b)(1) and 12(b)(6).

This lawsuit attempts to misuse an Illinois state statute, designed to safeguard legitimate biometric identifiers, to attack a video game feature that lets a user make a cartoon-like NBA player that may (or may not) look like the user, solely for the user's entertainment. Plaintiffs claim to have played Defendant Take-Two's popular NBA-based basketball video game NBA 2K15. The game includes a feature that allows users to personalize one of their fictional team members by creating a simulated player whose face may resemble the user's face. Plaintiffs claim this feature violates the Illinois Biometric Information Privacy Act ("BIPA"). BIPA was enacted to protect "public welfare, security, and safety" by safeguarding identifying biometric data such as fingerprints or retina scans that provide access to financial accounts or aid in security screening. 740 Ill. Comp. Stat. 14/5. BIPA targets biometric abuse that enables identity theft, financial damages, political targeting, and other serious harms. In contrast, NBA 2K15 lets players use a customized avatar to rebound, dunk, play against friends, and become a basketball MVP. Even though BIPA was never intended to apply to something like NBA 2K15, Plaintiffs seek millions in statutory damages under BIPA solely because Take-Two's game contains this feature, and they used it.

---

[1] Aware of the grounds on which this motion would be based, Plaintiffs informed the Court at the pre-filing conference that they did not want or need to amend their FAC before Take-Two filed this motion. Plaintiffs stated further that, if the Court grants this motion, Plaintiffs would not seek leave to amend.

Although Plaintiffs seek to recover the maximum statutory damages allowed under BIPA ($5,000 per intentional violation), Plaintiffs do not allege they have been harmed in any way by Take-Two's video game. They have alleged no financial harm, no identity theft, no damaging disclosure of identifying information to an unauthorized party, and no out-of-pocket expenses. Even worse, to coerce Take-Two to settle a baseless claim, Plaintiffs allege Take-Two owes millions of dollars to a class of similarly unharmed players who also used this feature.

Because of the absence of harm, there is no need to try to fit the square peg of Take-Two's video game into the round hole of BIPA. The FAC suffers from two fatal defects that warrant dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Plaintiffs cannot show they have Article III standing. Second, Plaintiffs cannot establish statutory standing under BIPA, which grants a right of action only to an "aggrieved" plaintiff, *i.e.*, someone who – unlike plaintiffs – suffered real harm. Thus, the FAC should be dismissed.[2]

## FACTS RELEVANT TO THE MOTION

Plaintiffs' lawsuit seeks to apply BIPA to Take-Two's NBA 2K15 and NBA 2K16 video games. *See* FAC ¶ 1. BIPA is a 2008 Illinois statute that regulates the use of biometric technologies by providing consent, storage, and retention requirements for private entities who obtain and/or disseminate biometric identifiers and information. *See* 740 Ill. Comp. Stat. 14/15. BIPA addresses the "growing" use of biometric data "in the business and security screening sectors." *Id.* at 14/5(a). Because biometrics are more unique than other identifiers "used to

[2] Plaintiffs also lack contractual standing because their contract with Take-Two limits any recovery to out-of-pocket expenses, and Plaintiffs have alleged none. Because Plaintiffs have indicated their intention to challenge the enforceability of that contract, Take-Two will defer resolution of those issues, if this motion is not granted, to summary judgment.

access finances or other sensitive information," the Illinois Legislature was concerned with safeguarding "biometric-facilitated financial transactions, including finger-scan technologies at grocery stories, gas stations, and school cafeterias." *Id.* at 14/5(b),(c).

Unlike other Illinois statutes, BIPA does not permit just *anyone* whose biometric information was improperly used to file a lawsuit. Instead, BIPA limits a private right of action to "[a]ny person aggrieved." *Id.* at 14/20. A prevailing aggrieved party may recover the greater of liquidated damages of $1,000 or actual damages for a negligent violation, or the greater of liquidated damages of $5,000 or actual damages for an intentional or reckless violation. *See id.*

Take-Two creates and distributes the NBA 2K15 and NBA 2K16 video games. *See* FAC ¶ 1. These NBA basketball-themed video games include a "MyPlayer" feature that allows users to create a personalized basketball player/avatar. *See id.* ¶ 21. The MyPlayer feature allows a user to photograph a face or other image, including his or her own face, using a camera attached to the user's hardware, and to use the data to create a simulated basketball player. *See id.* ¶¶ 21, 23-25. The MyPlayer feature also allows users to play with that avatar against others in "multiplayer" game mode. *See id.* ¶¶ 25. Take-Two does not sell or otherwise make any improper use of the MyPlayer avatar data.

The MyPlayer avatar can be used for entertainment purposes only. It is not used as an actual identifier in any context, including any for which BIPA was passed, such as for gaining access to one's bank account or place of employment. *Compare id.* ¶¶ 31-37 (describing how Plaintiffs used their MyPlayer avatars in a video game) *with* 740 Ill. Comp. Stat. 14/5 (showing BIPA's focus on identifiers that are used for financial transactions or security screenings).

Results from the MyPlayer feature are a far cry from identifying biometric information.[3] *See, e.g.*, James Dator, *NBA 2K15 Scanned My Dog Better Than My Face*, SB NATION (Oct. 7, 2014, 2:42 pm), http://www.sbnation.com/lookit/2014/10/7/6935733/nba-2k15-face-scanning-dog-onion-picture-horror-show; Brian Shea, *NBA 2K16's Face-Scanning Feature Is Still Not Great*, GAME INFORMER (Oct. 2, 2015, 6:58 PM), http://www.gameinformer.com/b/features/archive/2015/10/02/nba-2k16-s-face_2d00_scanning-feature-is-still-not-great.aspx ("NBA 2K16 does not feature any female players, so that might lead you to believe that Kim Wallace's face wouldn't scan into the game particularly well. You would be correct."); Seth Rosenthal, *The Early NBA 2k15 Face Scanner Results Are Wonderful, Hideous Monsters*, SB NATION (Oct. 7, 2014, 1:47 am), http://www.sbnation.com/lookit/2014/10/7/6933751/the-nba-2k15-face-scanner-xbox-ps4. In fact, the feature will superimpose on the avatar's "face" any photographic image the user creates during the photography session, such as a friend's face, the head of a pet dog or cat, vegetables, or space aliens from *Star Wars*:




[3] Plaintiffs did not attach images of their avatars to the FAC. Without Plaintiffs' account information, Take-Two cannot identify Plaintiffs' avatars and show them to the Court.

In addition, and significant to BIPA's purpose, the avatar's appearance is not verifiably linked to any identifiable account. *See*, *e.g.*, FAC ¶ 32 (Plaintiff Vanessa Vigil made her MyPlayer avatar on a console purchased, installed, and otherwise set up by her brother).

Both named Plaintiffs claim to have played Take-Two's NBA 2K15 video game.[4] *See id.* ¶¶ 31-32. They allege they used the MyPlayer feature to create avatars based on images of their faces and that their avatars were seen by third parties when they played in a multiplayer game. *See id.* ¶¶ 33-37. To use the feature, however, Plaintiffs consented to the recording and disclosure of their avatars. *See id.* ¶¶ 22, 33.

Plaintiffs do not allege that they suffered any harm or sustained any damages before, during, or after using the MyPlayer feature. Yet each of them seeks $5,000 from Take-Two under BIPA's liquidated damages provision, plus millions of dollars more, at a rate of $5,000 for each class member on whose behalf they purport to sue. *See* FAC ¶¶ 43, 57.

## ARGUMENT

Dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate where the Court determines that it "lacks the constitutional or statutory power to adjudicate the case." *Lleshi v. Kerry*, No. 14-cv-7412, 2015 WL 5143982, at *2 (S.D.N.Y. Sept. 1, 2015) (citing *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000)). As the party invoking this Court's jurisdiction, Plaintiffs must "prov[e] by a preponderance of the evidence" that this Court has jurisdiction to hear their claims. *Makarova v. U.S.*, 201 F.3d at 113. The Plaintiffs must also state a valid claim for relief, or dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate. *See Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007).

---

[4] Plaintiffs do not allege to have played NBA 2K16, although that title is mentioned throughout the FAC. *See, e.g.*, FAC ¶¶ 1, 5, 16, 21, 23, and 42.

Plaintiffs' case should be dismissed on two grounds: (I) Plaintiffs have not alleged an injury-in-fact, and thus lack Article III standing; and (II) Plaintiffs failed to state a claim under BIPA because they do not allege they were "aggrieved."

## I. Plaintiffs Lack Article III Standing to Sue on Behalf of Themselves or a Class

For this Court to have jurisdiction, Plaintiffs must have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy the Article III standing requirement, Plaintiffs must show they have suffered an injury in fact that is "concrete and particularized" and "actual or imminent." *Lujan*, 504 U.S. at 555. If Plaintiffs cannot make this showing, the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1).

Plaintiffs have not alleged that they suffered any harm as a result of Take-Two's actions: They allege no financial harm, no reputational damage, no identity theft, no single instance of disclosure of information to an unauthorized outside party, no out-of-pocket expenses. They allege only a violation of privacy rights, which is not an actual or a concrete and particularized injury in fact. *See* FAC ¶ 16 ("Not only do Take-Two's actions fly in the face of FTC guidelines, they also violate the privacy rights of Illinois residents"); *id.* ¶ 56 ("Take-Two violated the rights of Plaintiffs … to keep private these biometric identifiers and biometric information, as set forth in BIPA").

Plaintiffs cannot rely on an allegation of mere loss of privacy to create an injury in fact. In the Second Circuit, courts have held that loss of privacy involving identifying financial and personal information does not constitute an Article III injury in fact. In *Hammond v. Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, *2-5 (S.D.N.Y. June 25, 2010), the plaintiffs' claims arose out of the defendant's allegedly wrongful loss of their names, addresses, social security numbers, bank account information, financial data, debit or credit card data, checking account numbers and information, and/or shareholder account information. The court held

"Plaintiffs here do not have Article III standing … because they claim to have suffered little more than an increased risk of future harm from the loss … of their personal information." *Id*. at *6-8. *See also Nat'l Council of La Raza v. Gonzales*, 468 F. Supp. 2d 429, 433-35, 44 (E.D.N.Y. 2007) ("The speculation that … some unauthorized party may access plaintiffs' [identifying information] in violation of a plaintiff members' privacy right does not satisfy the requirement that plaintiffs identify an 'actual or imminent,' 'concrete and particularized' injury"); *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1 (D.D.C. 2007); *Amburgy v. Express Scripts, Inc*., 671 F.Supp.2d 1046 (E.D.Mo.2009). Similarly, Plaintiffs' vague and speculative allegation of loss of privacy implicates no current, real injury and thus cannot satisfy the Article III requirement of an actual and concrete harm.

Plaintiffs also cannot rely on the alleged violation of an Illinois statute to create an injury in fact. Whether violation of a *federal* statute can create statutory standing is currently before the Supreme Court. *See Robins v. Spokeo, Inc*., 742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (2015). Even if the Supreme Court holds that alleging violation of a federal statute is sufficient for standing, that will not save Plaintiffs' allegation of violation of a state statute. Courts allowing a statutory violation to substitute for an Article III injury in fact have done so for *federal* statutes that specifically exclude actual harm as a prerequisite to liability. *See, e.g.*, *In re Facebook Internet Tracking Litig.*, No. 5:12-MD-02314-EJD, 2015 WL 6438744, at *8 (N.D. Cal. Oct. 23, 2015) ("[B]ecause it specifically excludes economic damages as a precursor to liability … allegations of a CIPA violation sufficiently establish standing").[5]

[5] If this Court does not dismiss the FAC, the case should be stayed pending the resolution of *Robins v. Spokeo* because, if the Supreme Court holds that an alleged statutory violation is not sufficient to confer standing, this Court will lack jurisdiction. *See Marshel v. AFW Fabric Corp.*,

The violation of a right created under state law cannot confer federal standing under the Constitution. *See Ross v. AXA Equitable Life Ins. Co.*, No. 14-CV-2904 JMF, 2015 WL 4461654, at *8 (S.D.N.Y. July 21, 2015). The court in *Ross* dismissed a complaint based upon a New York statute that provides a cause of action to any person aggrieved by insurers' misrepresentations, holding the statute did not confer Article III standing upon those aggrieved. *Id*. at *1. Quoting the principle that "Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," the plaintiffs alleged they had been "individually deprived of their statutory right, conferred by New York law." *Id*. at *7 (citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975)). The court found, however, that there exists no authority "suggesting that a state legislature can confer Article III standing upon a plaintiff who suffers no concrete harm merely by authorizing a private right of action based on a bare violation of a state statute." *Id*. at *8. The court reasoned that "whether a state law authorizes standing, or whether a plaintiff has standing to bring suit in state court more generally, is irrelevant to the Article III analysis" and, thus, that it was insufficient for the plaintiffs to argue that an alleged violation of New York law "confers upon them an 'injury' sufficient to establish Article III standing." *Id*. at *8-9.

---

552 F.2d 471, 472 (2d Cir.1977) (instructing the district court to stay the proceedings pending a Supreme Court decision in a closely related case). Numerous district courts have stayed proceedings while the Supreme Court decides *Spokeo*. *See, e.g.*, *Eric B. Fromer Chiropractic, Inc. v. New York Life Ins. & Annuity Corp.*, No. CV 15-04767-AB (JCX), 2015 WL 6579779, at *2 (C.D. Cal. Oct. 19, 2015); *Salvatore v. Microbilt Corp.*, No. 4:14-CV-1848, 2015 WL 5008856, at *3 (M.D. Pa. Aug. 20, 2015).

Other courts have held that a violation of state law cannot create Article III standing. For example, when considering whether the plaintiff could have standing based on a violation of California law, the court in *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925 (N.D. Cal. 1992), found no authority suggesting that state legislatures may expand federal standing through the creation of a state statutory right. Remanding the state law claim, the court reasoned:

> It is one thing when Congress enacts a statute, the violation of which constitutes "injury" in the Art. III sense. Congress has, in that case, overridden the prudential limitations and provided an injury which confers standing. It is quite another thing to suggest that the states have the same power to waive by statute the prudential, or more problematically, the constitutional limitations on standing in federal court and, by way of a state created right, confer injury in the Art. III sense where none would otherwise exist.

*Id.* at 929. In *MAI System Corp. v. UIPS*, 856 F. Supp. 538 (N.D. Cal. 1994), the court granted a motion to dismiss a party's counterclaim based on California law, reasoning that "[s]tanding is a jurisdictional inquiry and it is axiomatic that states have no power directly to enlarge or contract federal jurisdiction." *Id.* at 540-41 (citation omitted). *See also Mortera v. N. Am. Mortgage Co*., 172 F. Supp. 2d 1240, 1244 (N.D. Cal. 2001) ("[A] plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury."); *Toxic Injuries Corp. v. Safety-Kleen Corp*., 57 F. Supp. 2d 947, 957 (C.D. Cal. 1999) (ordering remand of state statutory claim because it provided no basis for federal standing).

Because Plaintiffs have alleged no injury in fact, and because an alleged violation of state law cannot confer Article III standing, the FAC must be dismissed under Rule 12(b)(1).

## II. Plaintiffs Have Not Stated a Claim Under BIPA Because They Do Not Allege They Have Been "Aggrieved"

In addition to lacking Article III standing, Plaintiffs also lack standing under BIPA.[6] A plaintiff cannot state a claim for relief under a statute that does not provide the plaintiff with a remedy. *Doe v. Chao*, 540 U.S. 614, 627 (2004). When a statute requires a plaintiff to have suffered an injury, alleging a statutory violation alone is insufficient to confer standing. *See Howell v. Grindr, LLC*, No. 15cv1337-GPC(NLS), 2015 WL 9008801, at *3-4 (S.D. Cal. Dec. 15, 2015) (holding that a plaintiff who only alleged a statutory violation did not have standing under a statute that provides a claim to an "injured" buyer). Because BIPA allows only "aggrieved" plaintiffs to bring a claim, Plaintiffs are required to allege they suffered actual injury. Here, however, Plaintiffs have not alleged that they suffered actual injury. Thus, even if the Court accepts Plaintiffs' allegations as true, Plaintiffs fail to state a claim for relief, and the complaint is to be dismissed under Rule 12(b)(6). *See Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007).

Plaintiffs cannot evade dismissal by arguing that BIPA does not require actual injury. By its terms, BIPA requires Plaintiffs to have suffered actual harm to bring a claim. The statute's plain language limits a right of action to "[a]ny person aggrieved." 740 Ill. Comp. Stat. 14/20.

---

[6] This is an independent, and equally dispositive, ground for dismissal. In fact, courts may consider statutory standing before addressing Article III standing requirements. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 97 n. 2 (1998) (approving resolution of statutory standing before addressing Article III standing); *In re Facebook, Inc., Initial Pub. Offering Derivative Litig.*, 797 F.3d 148, 157 (2d Cir. 2015) (dismissing a case for statutory standing before considering whether the court had subject matter jurisdiction); *Howell v. Grindr, LLC*, No. 15cv1337-GPC(NLS), 2015 WL 9008801, at *8 (S.D. Cal. Dec. 15, 2015) (same holding).

Thus, a plaintiff that has not been "aggrieved" by a violation of the statute does not have standing to sue. A person "aggrieved" is one who is injured. *See* BLACK'S LAW DICTIONARY (9th ed. 2009) ("aggrieved" means "having suffered loss or injury;" "injured"). Courts interpreting the term "aggrieved" in other statutes have held that the plaintiff must prove an actual injury other than the alleged violation of the statute itself. *See, e.g.*, *Robainas v. Metro. Life Ins. Co.*, No. 14CV9926 DLC, 2015 WL 5918200, at *7 (S.D.N.Y. Oct. 9, 2015) ("[Section 4226(d)] appears to require a plaintiff to experience a concrete injury in order to state a cause of action. Section 4226(d) grants a cause of action to policyholders who were 'aggrieved' by 'knowing' misrepresentations about an insurer's reserves."); *In re Colony Hill Associates*, 111 F.3d 269, 273 (2d Cir. 1997) (interpreting an aggrieved person under the Bankruptcy Code as a person who is directly and adversely affected pecuniarily).

In *Padilla v. Dish Network L.L.C.*, No. 12-CV-7350, 2013 WL 3791140, at *1-3 (N.D. Ill. July 19, 2013), the plaintiff alleged that the defendant's retention of his personally identifiable information violated Section § 338i of the federal Satellite Home Viewer Extension and Reauthorization Act ("SHVERA"), which provides a claim to "any person aggrieved by an act of a satellite carrier in violation of this section." The Illinois district court held that a person is not "aggrieved" under that statute when their personal information has been only retained and when they have experienced no actual harm. *Id*. at *5. Because the statute provides that "an 'aggrieved' person may recover 'actual damages but not less than liquidated damages' of at least $1,000," the court dismissed the plaintiff's claim, holding the plaintiff was not "aggrieved" and could not recover statutory damages without plausibly alleging actual damages. *Id.* BIPA

similarly provides that only an "aggrieved" person may recover damages, and thus requires Plaintiffs to allege actual injury.[7]

BIPA's liquidated damages provision does not change the outcome. Plaintiffs still must have sustained an actual injury to bring a claim. In interpreting the Privacy Act of 1974 — which, similar to BIPA, permits recovery of "actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person *entitled to recovery* receive less than the sum of $1,000," 5 U.S.C. § 552a(g)(4)(A) (emphasis added) — the Supreme Court concluded that a plaintiff must have sustained an actual injury to recover the liquidated amount. *Doe v. Chao*, 540 U.S. 614, 620 (2004), *compare* 740 ILCS 14/20 (permitting an aggrieved person to recover "liquidated damages of $1,000 or actual damages, whichever is greater"). The plaintiff in *Chao* argued that, so long as a disclosure of information had been made in violation of the statute, he was entitled to the liquidated damages award, even if he had suffered no actual injury. The Supreme Court disagreed:

> [Plaintiff] argues that subsection (g)(4)(A) entitles any plaintiff adversely affected by an intentional or willful violation to the $1,000 minimum on proof of nothing more than a statutory violation …. The Government claims the minimum guarantee goes

[7] In contrast to BIPA, other Illinois privacy statutes award damages without requiring a showing of actual injury. For example, the "Customer Service and Privacy Protection" of Illinois' Cable and Video Customer Protection Law provides that "**[a]ny customer**, the Attorney General, or a local unit of government may pursue alleged violations of this Act by the cable or video provider in a court of competent jurisdiction." 220 Ill. Comp. Stat. Ann. 5/22-501 (emphasis added). Unlike this law, BIPA explicitly limits damages to "[a]ny person *aggrieved*" (emphasis added), which evidences the Legislature's intent to limit the recovery of damages under BIPA to those who have sustained an actual injury as a result of a wrongful disclosure or retention.

> only to victims who prove some actual damages. We think the Government has the better side of the argument
> …..
> [Plaintiff]'s manner of reading "entitle[ment] to recovery" … is in tension with more than the text, however. It is at odds with the traditional understanding that tort recovery requires not only wrongful act plus causation reaching to the plaintiff, but proof of some harm for which damages can reasonably be assessed.

*Id*. at 620-21. Here, too, the inclusion of liquidated damages in BIPA does not change the requirement that a plaintiff must be "aggrieved"—*i.e.*, have suffered an actual injury—to recover under the statute. Indeed, by permitting an "aggrieved" plaintiff to recover liquidated damages "or actual damages, whichever is greater," BIPA assumes that there are at least some actual damages in the first place. To hold otherwise would ignore the statute's plain language and provide "giveaways to plaintiffs with nothing more than abstract injuries." *Chao*, 540 U.S. at 625-26 (internal quotations omitted).

Plaintiffs did not allege any pecuniary or actual injury in the FAC. There is no "person aggrieved" in this case. By failing to allege that they are "aggrieved," Plaintiffs have failed to state a claim for relief and the FAC should be dismissed under Rule 12(b)(6).

## **CONCLUSION**

For the foregoing reasons, Take-Two respectfully requests that the Court dismiss Plaintiffs' First Amended Complaint, with prejudice.

Dated: January 15, 2016

Respectfully submitted,

By: /s/ Robert M. Schwartz
Robert M. Schwartz

KASOWITZ BENSON TORRES
& FRIEDMAN LLP
Jed I. Bergman
Aaron H. Marks
1633 Broadway
New York, NY 10019

IRELL & MANELLA LLP
Robert M. Schwartz*
Victor Jih*
Nathaniel Lipanovich*
Molly Russell*
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067

**Pro Hac Vice Applications Pending*

*Attorneys for Defendant*