**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RICARDO VIGIL and VANESSA VIGIL, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br>v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>      Defendant. | Case No. 15-cv-08211 (JGK)<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

Plaintiffs Ricardo Vigil and Vanessa Vigil, on behalf of themselves and the putative class, submit this response in opposition to the motion to dismiss ("Motion to Dismiss") the first amended complaint ("Complaint") filed by Defendant Take-Two Interactive Software, Inc. ("Take-Two").

## INTRODUCTION

In direct violation of the Illinois Biometric Information Privacy Act ("BIPA"), Take-Two is indefinitely storing, without any data retention or destruction policies, thousands of "scans of face geometry" – highly detailed geometric maps of the face – from Illinois residents who used the "PS4 Camera" and/or the "Xbox One Kinect camera" to create a personalized basketball player with a personally identifying facial rendition in the NBA 2K15 and/or NBA 2K16 video game(s).

Take-Two attempts to minimize Plaintiffs' claims as merely arising out of Plaintiffs' voluntary use of Take-Two's face scanning feature.  The BIPA violations alleged in this case, however, are premised on the indisputable fact that Take-Two has failed to comply with any of the statute's requirements, including procedures for obtaining informed consent, limitations on collection and use of biometric identifiers and information, and adoption and publication of data retention and destruction policies.  Having failed to comply with *any* of these statutory requirements, Take-Two has exposed Plaintiffs' and the putative class members' sensitive biometric identifiers and information to a heightened risk of theft, compromising the integrity of their identity and finances in the process.

Take-Two further mocks its own product as producing inaccurate face scans, and asserts that users do not necessarily create identifiers from their own faces as opposed to creating avatars from dogs, vegetables, costumed characters and the like.  These arguments are red herrings.  The statute says nothing about accuracy, and even if it did, that would present a question of fact

insusceptible of resolution on a motion to dismiss. And the Complaint alleges that Plaintiffs and the putative class members created face scans, not whimsical avatars from other creatures or objects.

As discussed below, the Motion to Dismiss for lack of Article III and statutory standing is meritless. The Complaint alleges that Take-Two has amassed a database of thousands of scans of face geometry, without consent or data retention or destruction policies, in flagrant derogation of Plaintiffs' and the putative class members' statutory rights under Illinois law. Such allegations confer Article III standing under controlling Supreme Court precedent, and it makes no difference that BIPA was enacted by the Illinois legislature as opposed to the United States Congress. Take-Two's alternative argument for dismissal – that Plaintiffs are not "persons aggrieved" under BIPA and thus lack statutory standing – is also unpersuasive because, as Illinois case law confirms, Plaintiffs were "aggrieved" within the meaning of BIPA by virtue of Take-Two's deprivation of their statutorily protected rights created by BIPA.

## ARGUMENT

### I.  APPLICABLE LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6), a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "Asking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence to prove the claim." *Twombly*, 550 U.S. at 545. Under this standard, "[o]nly a statement so conclusory that it fails to give notice of the basic events and circumstances on which a plaintiff relies should be rejected as legally insufficient under [Rule]12(b)(6)." *Patane v. Clark*, 508 F.3d 106, 116 (2d Cir. 2007). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court may refer to evidence outside the pleadings, such as

2

affidavits and other documents." *First Capital Asset Mgmt., Inc. v. Brickellbush, Inc.*, 218 F. Supp. 2d 369, 378-79 (S.D.N.Y. 2002).

## II.   ILLINOIS BIOMETRIC INFORMATION PRIVACY ACT

Section 10 of BIPA states:

> 'Biometric identifier' means a retina or iris scan, fingerprint, voiceprint, or **scan of** hand or **face geometry**. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. . . .
>
> 'Biometric information' means **any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual**. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

740 ILCS 14/10 (emphasis added).

BIPA prohibits the collection, possession and disclosure, without an individual's express written consent, of both biometric identifiers and biometric information. *See id.* 14/15(b)(1) ("No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first . . . informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored[.]"); *id.* 14/15(c) ("No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information."); *id.* 14/15(d)(1) ("No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless . . . the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure[.]").

BIPA further requires any entity in possession of biometric identifiers or information to develop and publish data retention and destruction policies. *See id.* 14/15(a) ("A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information . . . .").[1]

Finally, BIPA provides for a private right of action:

> Any person aggrieved by a violation of this Act shall have a right of action in a State circuit court or as a supplemental claim in federal district court against an offending party. A prevailing party may recover for each violation:
>
> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
>
> (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and
>
> (4) other relief, including an injunction, as the State or federal court may deem appropriate.

*Id.* 14/20.

### III. CONTROLLING SUPREME COURT AND SECOND CIRCUIT AUTHORITY CONFIRM THAT PLAINTIFFS HAVE ARTICLE III STANDING.

Article III standing exists in this case by virtue of Take-Two's violations of Plaintiffs' statutorily protected rights created by BIPA.

---

[1] Each BIPA restriction applies disjunctively to both biometric information and biometric identifiers. *See* 740 ILCS 14/15(a) ("A private entity in possession of biometric identifiers *or* biometric information must develop a written policy . . . ."); *id.* 14/15(b) (providing that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier *or* biometric information" absent compliance with numerous steps for obtaining informed consent").

4

Contrary to the Motion to Dismiss, the United States Supreme Court has held that "[t]he injury required by Article III can exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress can enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute."); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 n.6 (1963) (violation of statutory right causes "a legal injury" sufficient to confer standing). In such cases, the standing question "is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500.

In light of this controlling Supreme Court authority, "the Second Circuit does not as a rule require allegations of injury beyond statutory violation" to establish Article III standing. *Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 667-68 (S.D.N.Y. 2015); *see also Fulton v. Goord,* 591 F.3d 37, 41 (2d Cir. 2009) (explaining that Article III's requirement of an "injury in fact, by which is meant an invasion of a legally protected interest, . . . may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing," and that "[a]ccordingly, standing is gauged by the specific common-law, statutory or constitutional claims that a party presents") (internal citations and quotation marks omitted); *Leyse v. Bank of Am., Nat'l Ass'n*, No. 09 CIV. 7654 (JGK), 2010 WL 2382400, at *3 (S.D.N.Y. June 14, 2010) (Koeltl, J.) (same).

Against this backdrop, the Supreme Court and Second Circuit have routinely found the existence of Article III standing based solely on the alleged violation of a statutorily created right. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), for example, the Supreme Court held that black housing "testers" who had been inaccurately told by an apartment building manager that no units were available to rent had standing to bring suit under the Fair Housing Act for unlawful racial steering, even though the testers did not intend to rent a unit in the building. *Havens*, 455 U.S. at

5

364. Noting that the statute made it unlawful to "represent to any person because of race . . . that any dwelling is not available for inspection, sale or rental when such a dwelling is in fact so available," the Court determined that "Congress has thus conferred on all 'persons' a legal right to truthful information about available housing." *Id.* at 373. "That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the Act]." *Id.* at 364. Accordingly, the Court held that deprivation of the testers' statutory right to truthful information satisfied Article III because "[t]he actual or threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" *Id.* at 373 (quoting *Warth,* 422 U.S. at 500).

Similarly, in *Donoghue v. Bulldog Investor's General Partnership*, 696 F.3d 170 (2d Cir. 2012), the Second Circuit held that a shareholder had Article III standing to bring a derivative action under § 16(b) of the Exchange Act (15 U.S.C. § 78p(b)) on behalf of a corporation against a beneficial owner who had engaged in short-swing trading of the corporation's stock. In rejecting the defendant's argument that the corporation had not suffered any "cognizable injury" from the trading, and, as a result, the plaintiff lacked Article III standing, the Second Circuit noted that actual misuse of insider information is not required. Rather, the legislature created a private right of action because it had "determined that the only method effective to curb the evils of insider trading was a flat rule taking the profits out of a class of transactions in which the possibility of abuse was believed to be intolerably great." *Id.* at 174 (citing *Reliance Elec. Co. v. Emerson Elec. Co.*, 404 U.S. 418, 422 (1972)). The statute thus conferred upon stock issuers an enforceable legal right to be free from short-swing trading, and "deprivation of [that right] establishe[d] Article III standing" – regardless of whether the short-swing trades resulted in loss to the corporation. *Id.* at 177. "While this particular legal

right might not have existed but for the enactment of § 16(b), Congress's legislative authority to broaden the injuries that can support constitutional standing is beyond dispute." *Id.* at 180.

Just as the Exchange Act confers a right to be free from profitable short-swing trading, and the Fair Housing Act confers a right to be free from false information about available housing – the violations of which confer private rights of action regardless of whether any actual damages are suffered – Illinois has elected to confer on Plaintiffs the privately enforceable right to be free from unauthorized gathering and storage of their biometrics, and the right to be provided with destruction and retention policies when such data is collected. Thus, Take-Two's violation of these statutorily created rights, as alleged in the Complaint, satisfies the Article III inquiry. *See, e.g., S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 358 (S.D.N.Y. 2009) (Koeltl, J.) ("Congress may create a statutory right the alleged violation of which constitutes injury in fact. The denial of a FAPE or of a procedural right created by the IDEA thus constitutes an injury sufficient to satisfy the standing requirement.") (quotation omitted).

Indeed, numerous courts across the country have similarly concluded that bare statutory violations of consumer privacy statutes, like BIPA, sufficiently confer Article III standing. *See, e.g., Graczyk v. West Pub. Co.*, 660 F.3d 275, 278 (7th Cir. 2011) (finding no monetary harm necessary to bring claim for violation of the Driver's Privacy Protection Act, as "Congress has defined the relevant injury under the DPPA as 'obtain[ment], disclos[ure], or [use]' ") (citation omitted); *Klimas v. Comcast Cable Comm.*, 465 F.3d 271, 275-76 (6th Cir. 2006) (finding standing where plaintiff alleged violations of the Cable Act's privacy provisions, with no claim of economic harm).

The three data breach cases relied upon by Take-Two are inapposite because none of them concern Article III standing in the context of the deprivation of a statutorily-created right. For instance, in *Hammond v. The Bank of New York Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010), the plaintiffs alleged various common law, <u>non-statutory</u> claims

7

arising from a data breach. In concluding that the plaintiffs "do not have Article III standing … because they claim to have suffered little more than an increased risk of future harm from the loss (whether by accident or theft) of their personal information," *Hammond*, 2010 WL 2643307, at *2, the court noted in a parenthetical that the plaintiffs had "not come forward with a single . . . statute, from any jurisdiction, authorizing the kind of action they now ask this federal court . . . to recognize as a valid theory of recovery," *id.* at *13 (quoting *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) (emphasis added)). Similarly, in *Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1 (D.D.C. 2007), another data breach case cited by Take-Two, the court concluded that plaintiffs "fail[ed] to allege a sufficiently 'actual or imminent' injury in fact," *Randolph*, 486 F. Supp. 2d at 10, in part because plaintiffs' claims did not arise out of the deprivation of a statutorily created right, *see id.* at 9 ("Nor does Plaintiffs' Complaint provide any indication . . . that they seek relief based on a provision of the D.C.Code. . . . Plaintiffs have not offered to amend or moved to amend their Complaint to include claims of . . . a statutory violation."). Finally, in *Amburgy v. Express Scripts, Inc.*, 671 F. Supp. 2d 1046 (E.D. Mo. 2009), another case where an increased risk of harm resulting from a data beach was found insufficient to confer standing, the court noted that the Missouri data breach statute contained no private right of action, *see Amburgy*, 671 F. Supp. 2d at 1056, and thus, unlike here, did not confer an enforceable right to plaintiff.

Also inapposite is *National Council of La Raza v. Gonzales*, 468 F. Supp. 2d 429 (E.D.N.Y. 2007), a case in which the district court concluded that plaintiffs lacked Article III standing to bring a claim under the Administrative Procedure Act ("APA"), 28 U.S.C. § 534, because "[t]he APA does not provide an independent basis for standing" but rather "only authorizes, under certain conditions including the existence of an Article III injury-in-fact to the plaintiff, judicial review over final

8

agency action." *Gonzales*, 468 F. Supp. 2d at 437. None of plaintiffs' alleged injuries resulting from final agency action arose from a deprivation of a statutorily created right.[2]

In this case, unlike each of the four cases on which the Motion to Dismiss relies, Plaintiffs do not allege that Take-Two violated Illinois common law but rather violated their specific statutory rights, enforceable through a private right of action, to be provided full and accurate disclosures regarding Take-Two's biometrics collection practices, 740 ILCS 14/15(b)(1)-(2), to not have their biometrics collected or disclosed absent written consent, *id.* 14/15(b)(3), and to be provided data destruction and retention policies regarding their biometrics subsequent to collection, *id.* 14/15(a). Because the "statutory provision[s] on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief," *Warth*, 422 U.S. at 500, Plaintiffs have Article III standing to pursue their claims for violation of BIPA.[3]

---

[2]  The district court in *Gonzalez* next considered each the four underling injuries that plaintiffs alleged arose from the defendants' policies and practices of disseminating civil immigration information to state and local enforcement officials through the National Crime Information Center database: (1) the heightened risk to plaintiff members of arrest stemming from the placement of immigration data into the NCIC database, (2) the fear of arrest resulting from Defendants' actions, (3) the loss of privacy associated with the entry of immigration information into the NCIC database, and (4) the overall deleterious effect on law enforcement when immigrants fear and fail to communicate with law enforcement officials. None of these alleged injuries constituted the deprivation of any statutorily created right, and the district court found each too speculative to confer Article III standing. *Id.* at 437-445.

[3]  Take-Two's request for a stay pending the Supreme Court's decision in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014) *cert. granted*, 135 S. Ct. 1892 (2015), should be denied. First, Take-Two failed to indicate its intention to move for a stay pending *Spokeo* in its pre-motion letter to the Court in this matter. The requested stay should be denied on this basis alone. Second, Take-Two fails to discuss any of the applicable factors that district courts of the Second Circuit consider in analyzing requests to stay litigation pending a Supreme Court decision. Third, numerous courts across the country have recently declined to issue stays pending *Spokeo*, and this Court should do the same. *See, e.g., Melnarowicz v. Pierce & Assocs., P.C.*, No. 14 C 07814, 2015 WL 4910748, at *2 (N.D. Ill. Aug. 17, 2015) ("If the Supreme Court answers this question in Spokeo's favor, then the opinion might well overrule *Sterk*. But, if and until that day, this Court must follow the current rule in this Circuit."); *Backhaut v. Apple Inc.*, No. 14-CV-02285-LHK, 2015 WL 4776427, at *6 (N.D. Cal. Aug. 13, 2015) ("The Court is aware that the United States Supreme Court has granted certiorari in *Spokeo, Inc. v. Robins* . . . and that *Spokeo* may address whether the actual injury requirement of Article III can be satisfied solely by a defendant's invasion of a statutory legal right. In the absence of a contrary decision from the United States Supreme Court, however, the Court concludes that Defendant's alleged violation of the Wiretap Act is sufficient to satisfy the injury-in-fact requirement of Article III standing.").

Take-Two attempts to obfuscate this clear principle of law by arguing that the violation of state statutory rights does not confer Article III standing. (Opp. at 13-14.) This argument is contrary to the decisions of every circuit court of appeals to have considered this issue, which uniformly hold that the violation of a state statute <u>does</u> confer Article III standing. *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 716 (4th Cir. 2015) ("[W]e conclude that Beyond Systems had Article III standing. It claimed a harm -- receiving spam e-mail -- and Maryland and California law create an interest in being free from such harm. . . . Beyond Systems contended that Defendants sent false and deceptive spam e-mails, i.e., caused its claimed harm. And Maryland and California law provide statutory redress. . . . Accordingly, we conclude that Beyond Systems had Article III standing."); *FMC Corp. v. Boesky*, 852 F.2d 981, 993 (7th Cir. 1988) ("Properly pleaded violations of state-created legal rights, therefore, must suffice to satisfy Article III's injury requirement. Thus, even in the absence of a specific finding that FMC was injured by the misappropriation of its confidential business information, FMC sufficiently alleged the violation of a state-law right that in itself would suffice to satisfy Article III's injury requirement."); *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001) ("[S]tate law can create interests that support standing in federal courts. If that were not so, there would not be Article III standing in most diversity cases."); *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712, 721 (10th Cir. 2008) ("Although Article III standing is a question of federal law, state law may create the asserted legal interest.").

As *Cantrell* observes, the attempt to relegate state statutory claims to second-class status makes no sense. Federal courts sitting in diversity take up state-law questions on a daily basis. There is no question that federal courts have standing to consider violations of state law. Nor is there any rational basis for discriminating between state common law and state statutory law in assessing standing. Take-Two's argument would prove far too much.

Take-Two ought to be aware of the foregoing persuasive decisions by numerous circuit courts of appeals, yet fails to acknowledge them in its memorandum of law to this Court. Instead, Take-Two cites two non-binding decisions by district courts: *Ross v. AXA Equitable Life Insurance Co.*, No. 14-CV-2904 (JMF), 2015 WL 4461654 (S.D.N.Y. July 21, 2015), and *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925 (N.D. Cal. 1992). With all due respect, the consistent conclusions of the circuit courts of appeals are correct, and the decisions in *Ross* and *Mangini* are erroneous. Moreover, it appears the district courts in *Ross* and *Mangini* can be readily forgiven, because they were the victims of poor briefing. In *Ross*, the court stated that it was "not aware of . . . any authority suggesting that a *state* legislature can confer Article III standing upon a plaintiff who suffers no concrete harm merely by authorizing a private right of action based on a bare violation of a state statute." *Ross*, 2015 WL 4461654, at *8. The plaintiff in *Ross* inexplicably failed to cite the decisions of the Fourth, Seventh, Ninth and Tenth Circuits recognizing standing. Similarly, in *Mangini*, the district court reached its decision after noting that the plaintiff "cited no authority . . . which suggests that *state legislatures* may expand the standing in federal courts," *Mangini*, 793 F. Supp. at 929, despite the fact that the Seventh Circuit had decided *FMC* four years prior.

This Court should follow the decisions of every circuit court of appeals to have considered the question and hold that violation of Plaintiffs' statutory rights created by BIPA sufficiently confers Article III standing.

## IV. PLAINTIFFS HAVE STATUTORY STANDING BECAUSE THEY ARE "PERSONS AGGRIEVE[D]" WITHIN THE MEANING OF BIPA.

Take-Two's alternative argument – that Plaintiffs are not "persons aggrieved" within the meaning of BIPA and thus lack statutory standing – is also incorrect.

"Person aggrieved" is a term of common usage that refers to a person who falls within the "zone of interests" sought to be protected by the statute claimed to have been violated. *See, e.g., Thompson v. N. Am. Stainless*, 562 U.S. 170, 178 (2011). In *Thompson*, the Supreme Court held that the

11

term "aggrieved," when used in a statute, enables suit "by any plaintiff with an interest 'arguably [sought] to be protected by the statute,' while excluding plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions." *Id.* (citation omitted). Here, Plaintiffs were deprived of, *inter alia*, their statutory rights to not have their biometric identifiers or information collected without first providing informed written consent, and to be provided statutorily compliant data retention and destruction policies. These injuries are of precisely the sort that the Illinois legislature sought to protect against in enacting BIPA.

None of the federal cases cited by Take-Two are relevant because in each of those cases the court interpreted a *federal* statute. When interpreting a state law such as BIPA, a federal court applies the rules of statutory construction applicable under state law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938); *U.S. Fire Ins. Co. v. Barker Car Rental,* 132 F.3d 1153, 1156 (7th Cir. 1997) ("[W]e must apply the same rules of statutory construction that the Supreme Court of Illinois would apply if it were faced with the same task.").[4]

"In Illinois, the applicable principles of statutory construction are well established. The primary rule is that courts should ascertain and give effect to the intention of the legislature. To

---

[4] In any event, Take-Two's argument fares no better under cases interpreting federal statutes that provide relief to any "person aggrieved." In *Innovative Health Systems, Inc. v. City of White Plains*, 931 F. Supp. 222, 237 (S.D.N.Y. 1996) *aff'd in part*, 117 F.3d 37 (2d Cir. 1997), a case concerning a plaintiff's standing to sue under the federal Rehabilitation Act ("RA"), the district court explained: "'The use of the phrase 'any person aggrieved' in Section 505(a)(2) evinces a congressional intention to define standing to bring a private action under Section 504 as broadly as is permitted by Article III of the Constitution.'" *Innovative Health*, 931 F. Supp. at 237 (quoting *Nodleman v. Aero Mexico,* 528 F. Supp. 475, 485 (D.C. Cal. 1981) (citing *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972))). Similarly, in *Loeffler v. Staten Island University Hospital*, 582 F.3d 268 (2d Cir. 2009), the Second Circuit held that "'[a]ny person aggrieved by any act or failure to act by any recipient of Federal assistance' under the RA may bring suit," *id.* at 280 (quoting 29 U.S.C. § 794a(a)(2)), because "'the use of such broad language in the enforcement provisions of the [RA] evinces a congressional intention to define standing to bring a private action under [the RA] . . . as broadly as is permitted by Article III of the Constitution,'" *id.* (quoting *Innovative Health*, 117 F.3d at 47) (alterations and ellipsis in original).

Thus, in this case, the use of the phrase "person aggrieved" in BIPA evinces an intention of the legislature "to define standing to bring a private action under [BIPA] . . . as broadly as is permitted by Article III of the Constitution." *Id.* For the reasons discussed above (*supra* Section III), Plaintiffs have Article III standing, and thus, by extension, statutory standing as "persons aggrieved."

achieve that goal, we must regard the language of the statute as the best indication of legislative intent." *U.S. Fire Ins.*, 132 F.3d at 1156 (citing *Abrahamson v. Ill. Dep't of Prof'l Regulation,* 153 Ill. 2d 76, 90 (1992)); *see also DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006) ("When the language of the statute is clear, it must be applied as written without resort to aids or tools of interpretation."). Courts "will not depart from the plain statutory language by reading into the statute exceptions, limitations, or conditions that the legislature did not express." *People v. Lewis*, 223 Ill. 2d 393, 402 (2006) (citation omitted).

The meaning of "person aggrieved" under Illinois law was discussed in *Mandziara v. Canulli*, 299 Ill. App. 3d 593 (1998), and the result demonstrates that Take-Two's argument is incorrect. In *Mandziara*, the plaintiff brought an action against the defendant, her former husband, for subpoenaing her mental health records without a court order in violation of the Illinois Mental Health and Developmental Disabilities Confidentiality Act ("MHA"), 740 ILCS 110/1-17. The MHA provides, in pertinent part, that "[n]o party . . . nor his or her attorney, shall serve a subpoena seeking to obtain access to records or communications under this Act unless the subpoena is accompanied by a written order issued by a judge, authorizing the disclosure of the records or the issuance of the subpoena." 740 ILCS 110/10(d). The MHA further provides that "[a]ny person aggrieved by a violation of this Act may sue for damages, an injunction, or other appropriate relief." 740 ILCS 110/15. In rejecting the defendant's argument that the plaintiff failed to state a claim because the defendant "did not look at [plaintiff's] records," *Mandziara*, 299 Ill. App. 3d at 599, and thus did not actually harm the plaintiff, the court explained: "The General Assembly has made a strong statement about the importance of keeping mental health records confidential. If we were to hold Canulli did not violate the Act merely because he did not look at Mandziara's records, we would be rewriting the statute, effectively eroding unmistakable legislative intent under the weight of judicial fiat." *Id.* Accordingly, the Court concluded that the plaintiff was a "person aggrieved"

under FHA by virtue of the defendant's violation of the disclosure restrictions of 740 ILCS 110/10(d). *See id.* at 600 (explaining that "a person aggrieved by a violation of the Act" is entitled to "a remedy of damages against persons who violate the act," without regard for the "nature and extent of those damages").

In this case, the phrase "person aggrieved," as it appears in BIPA, has the same meaning. Plaintiffs are "persons aggrieved" under BIPA, and thus have statutory standing, based upon Take-Two's violations of the specific statutory requirements of BIPA. As in *Mandziari*, the "nature and extent of [Plaintiffs'] damages" are of no consequence, especially since BIPA specifically provides for statutory damages for each such violation.

Take-Two contends that the absence of the term "person aggrieved" in the Illinois Cable and Video Customer Protection Law ("CVCPL"), 220 ILCS 5/22-501, means that actual injury is required under any other statute, such as BIPA, in which the term "person aggrieved" appears. First, *Mandziara* belies that assertion. Second, the CVCPL does not conflict with BIPA; the two statutes simply address different concerns and accordingly provide different grounds for standing. A plaintiff under the CVCPL must be a customer of the defendant cable or video provider, but otherwise need not be within the "zone of interests" contemplated by a "person aggrieved" standard, *see Thompson*, 562 U.S. at 178. A plaintiff under BIPA, by contrast, plainly need not be a customer of the defendant, yet must be within the zone of interests contemplated by a "person aggrieved" standard. Thus, Plaintiffs would have standing under BIPA to sue not only Take-Two but also a secondary trafficker that bought face scans from Take-Two and sold them to identity-theft criminals – even though Plaintiffs were not "customers" of the secondary trafficker. The CVCPL poses no obstacle to Plaintiffs' standing under BIPA.

Because the Plaintiffs are "persons aggrieved" within the meaning of BIPA, Plaintiffs have statutory standing to assert their claims against Take-Two. The Motion to Dismiss should be denied.

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss should be denied in its entirety.

Dated: February 16, 2016                    Respectfully submitted,

By: /s/ John C. Carey
John C. Carey
jcarey@careyrodriguez.com
CAREY RODRIGUEZ
MILIAN GONYA LLP
1395 Brickell Avenue, Suite 700
Miami, FL 33131
Phone: (305) 372.7474
Fax: (305) 372.7475

*Attorneys for Plaintiffs and the putative class*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 16, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the Notice of Electronic Filing generated by CM/ECF.

                                                    /s/ John C. Carey