UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RICARDO VIGIL and VANESSA VIGIL, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

      v.

TAKE-TWO INTERACTIVE SOFTWARE, INC.,

                Defendant.

---

Civil Action 1:15-cv-08211 (JGK)

**REPLY BRIEF OF DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE, INC. IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................................... 1

II.     PLAINTIFFS DO NOT HAVE ARTICLE III STANDING ................................ 2

      A.      The Mere Violation of a Statute Is Not Sufficient for Article III
             Standing. ......................................................................................................... 2

      B.      Regardless Of What Congress Can Do, State Legislatures Have No
             Power to Expand The Jurisdiction of Federal Courts. ........................................ 4

III.    PLAINTIFFS ARE NOT A "PERSON AGGRIEVED" UNDER BIPA ............. 8

IV.     CONCLUSION ................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Austin-Spearman v. AMC Network Entm't LLC*,
    98 F. Supp. 3d 662 (S.D.N.Y. 2015)....................................................................... 3, 4

*Bantam Books, Inc. v. Sullivan*,
    372 U.S. 58 (1963)................................................................................................ 4

*Beyond Systems, Inc. v. Kraft Foods, Inc.*,
    777 F.3d 712 (4th Cir. 2015) ............................................................................... 6

*Cantrell v. City of Long Beach*,
    241 F.3d 674 (9th Cir. 2001) ............................................................................... 6, 7

*Doe v. Chao*,
    540 U.S. 614 (2004).............................................................................................. 10

*Donoghue v. Bulldog Investors General Partnership*,
    696 F.3d 170 (2d Cir. 2012).................................................................................. 3, 4

*Epstein v. JPMorgan Chase & Co.*,
    13 Civ. 4744, 2014 WL 1133567 (S.D.N.Y. 2014)........................................... 5

*FMC Corp. v. Boesky*,
    852 F.2d 981 (7th Cir. 1988) ............................................................................... 6, 7

*Fulton v. Goord*,
    591 F.3d 37 (2d Cir. 2009)................................................................................... 4

*Graczyk v. W. Pub. Co.*,
    660 F.3d 275 (7th Cir. 2011) ............................................................................... 4

*Hammond v. Bank of New York Mellon Corp.*,
    No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)................................ 8

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982).............................................................................................. 4

*Hollingsworth v. Perry*,
    133 S.Ct. 2652 (2013)........................................................................................... 5, 7

*In re Facebook, Inc., IPO Derivative Litig.*,
    797 F.3d 148 (2d Cir. 2015).................................................................................. 2

**Page(s)**

*Innovative Health Systems, Inc. v. City of White Plains*,
   931 F. Supp. 222 (S.D.N.Y. 1996)................................................................. 9

*Kendall v. Employees Ret. Plan of Avon Products*,
   561 F.3d 112 (2d Cir. 2009)..................................................................... 2, 3

*Klimas v. Comcast Cable Comm'n*,
   465 F.3d 271 (6th Cir. 2006) .................................................................... 4

*LaPierre ex rel. Town of Yorktown v. DiBartolo*,
   12 Civ.1996, 2013 WL 656313 (S.D.N.Y. 2013) ....................................... 5

*Lee v. American Nat. Ins. Co.*,
   260 F.3d 997 (9th Cir. 2001) .................................................................... 7

*Leyse v. Bank of Am.*,
   No. 09 Civ.7654 JGK, 2010 WL 2382400 (S.D.N.Y. 2010)....................... 4

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973).................................................................................. 4

*Loeffler v. Staten Island University Hospital*,
   582 F.3d 268 (2d Cir. 2009)...................................................................... 9

*MAI Systems Corp. v. UIPS*,
   856 F. Supp. 538 (N.D. Cal. 1994) ........................................................... 5

*Mandziara v. Canulli*,
   299 Ill. App. 3d 593 (1998) ...................................................................... 9

*Mangini v. R.J. Reynolds Tobacco Co.*,
   793 F. Supp. 925 (N.D. Cal. 1992) ........................................................... 5

*Mortera v. N. Am. Mortgage Co.*,
   172 F. Supp. 2d 1240 (N.D. Cal. 2001) .................................................... 5

*Randolph v. ING Life Insurance and Annuity Company*,
   486 F. Supp. 2d 1 (D.D.C. 2007) .............................................................. 8

*Robainas v. Metro. Life Ins. Co.*,
   No. 14CV9926 DLC, 2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015).......... 3, 5

*Robins v. Spokeo, Inc.*,
   742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015) .............. 1, 2, 3, 8

*Ross v. AXA Equitable Life Ins. Co.*,
   115 F. Supp. 3d 424 (S.D.N.Y. 2015)................................................... 5, 8

**Page(s)**

*S.W. v. New York City Dep't of Educ.*,
    646 F. Supp. 2d 36 (S.D.N.Y. 2009)............................................................................ 4

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) .......................................................................... 7

*Thompson v. N. Am. Stainless*,
    562 U.S. 170 (2011)...................................................................................................... 9

*Toxic Injuries Corp. v. Saftey-Kleen Corp.*,
    57 F. Supp. 2d 947 (C.D. Cal. 1999) ........................................................................ 5

*Trafficante v. Metropolitan Life Insurance Co.*,
    409 U.S. 205 (1972)...................................................................................................... 9

*United States v. Richardson*,
    418 U.S. 166 (1974)...................................................................................................... 8

*Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*,
    528 F.3d 712 (10th Cir. 2008) .................................................................................... 6

*Warth v. Seldin*,
    422 U.S. 490 (1975)............................................................................................... 2, 4, 6

## Other Authorities

1 Data Sec. & Privacy Law § 9:165,
    Westlaw ( June 2015).................................................................................................... 3

1 FED. PROC., L. ED. § 1:2, Westlaw (Dec. 2015)................................................................. 6

32A AM. JUR. 2D FEDERAL COURTS § 582,
    Westlaw (Feb. 2016).................................................................................................... 6

BLACK'S LAW DICTIONARY (9th ed. 2009)......................................................................... 8

Petition for Writ of Certiorari at 9-10, *Spokeo Inc.*, No. 13-1339 (May 1, 2014) ................... 2

I.     **INTRODUCTION**

There is no need for the Court to decide whether Plaintiffs can stretch the Illinois

Biometric Information Privacy Act ("BIPA") to cover a video game that creates a cartoon-like

NBA player.  The parties agree that this case cannot continue unless Plaintiffs can show both

Article III standing and statutory standing.  *See* Opp. at 2.  As explained below, they cannot.

As for Article III standing, Plaintiffs concede there is no injury here.  They admit that

they suffered no harm from playing Take-Two's video game—no financial loss, no identity theft,

no out-of-pocket expense, or anything else.  Nor do they want leave to amend to cure that defect,

having admitted at the January 12 Pre-Filing Conference that they have nothing further to plead.

Plaintiffs claim instead that a mere *violation* of a statute is good enough.  Numerous

courts have held that it is not.  The problem for Plaintiffs is that the abstract "interests" they seek

to vindicate, such as an interest in being provided full and accurate disclosures, not having their

private information taken or disclosed, and an interest in being provided with destruction and

retention policies (*see* Opp. at 9), are not constitutionally sufficient to confer standing.

And while, subject to what the Supreme Court may decide in *Robins v. Spokeo, Inc.*, 742

F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015), it may be *possible* for *Congress*

to deem such abstract rights to be sufficient for federal jurisdiction, under basic supremacy

principles, *state* legislatures cannot pass laws to expand the jurisdiction of federal courts to

embrace such abstract "interests."  In other words, regardless of whether Plaintiffs could proceed

without actual injury if they were invoking a *federal* statute, the lack of harm beyond the

violation of a *state* statute is insufficient to confer Article III standing.  Plaintiffs' contrary

argument is without precedent, contradicts Supreme Court authority, and would require a

dramatic expansion of state power over federal courts.

As for statutory standing, under BIPA's plain language, Plaintiffs cannot recover unless they were "aggrieved" by—*i.e.*, actually harmed by—a violation.  Given Plaintiffs' concession that they were not harmed, their claim may not proceed.

This Court may dismiss this lawsuit on either ground.  *See In re Facebook, Inc., IPO Derivative Litig.*, 797 F.3d 148, 155-57 (2d Cir. 2015).  Under either ground, given Plaintiffs' January 12 concession, the Court should grant the motion without leave to amend.

## II.      PLAINTIFFS DO NOT HAVE ARTICLE III STANDING

### A.      The Mere Violation of a Statute Is Not Sufficient for Article III Standing.

Plaintiffs readily acknowledge that their claimed Article III standing exists, if at all, "by virtue of Take-Two's violations of Plaintiffs' statutorily protected rights created by BIPA."  Opp. at 4.  The question is whether that is enough.  Plaintiffs argue that the Supreme Court has already decided the issue in their favor.  *See* Opp. at 5.  Presumably, Plaintiffs believe that the closely watched ruling expected this term in *Robins v. Spokeo, Inc.*, 742 F.3d 409 (9th Cir. 2014), *cert. granted*, 135 S. Ct. 1892 (2015), will be a non-event.  That may come as news to the Supreme Court, which granted certiorari because the question is not settled.  Whereas the Sixth, Seventh, and Ninth Circuits have held that a statutory violation, unaccompanied by concrete injury, is sufficient to establish Article III standing, the Second and Fourth Circuits require additional harm.  *See* Petition for Writ of Certiorari at 9-11, *Spokeo Inc.*, No. 13-1339 (May 1, 2014).

Oddly, the Supreme Court decision from which Plaintiffs' analysis flows, *Warth v. Seldin*, 422 U.S. 490 (1975), held that the defendant's violation of the federal statutes was *not* sufficient to confer standing.  *Id.* at 508.  The Court emphasized that "Art. III's requirement remains: the plaintiff still must allege a distinct and palpable injury to himself." *Id.* at 501.

Nor is merely alleging the violation of a statute sufficient to establish standing under the Second Circuit's approach.  *See Kendall v. Employees Ret. Plan of Avon Products*, 561 F.3d 112,

118 (2d Cir. 2009) ("plan participant must … assert a constitutionally sufficient injury arising from the breach of a statutorily imposed duty"); *Robainas v. Metro. Life Ins. Co.*, No. 14CV9926 DLC, 2015 WL 5918200, at *6 (S.D.N.Y. Oct. 9, 2015) ("Even our national legislature may not bypass the constitutional requirements of standing.").

Plaintiffs cite *Donoghue v. Bulldog Investors General Partnership*, 696 F.3d 170, 177-78 (2d Cir. 2012).  But *Donoghue* held that, although Congress can "clarif[y] the injury that would support standing," it cannot "eliminate the injury requirement."  696 F.3d at 180.  As the *Robainas* court explained, in *Donoghue*, "the breach of a fiduciary duty and reputational interest in avoiding insider trading provided a concrete personal stake in the suit to satisfy Article III." 2015 WL 5918200, at *6.

Admittedly, some district courts in this Circuit have not been consistent on this issue. *Compare, e.g.*, *Robainas*, 2015 WL 5918200, at *6 *with Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662, 667 (S.D.N.Y. 2015).  The prevailing view, however, based on *Kendall*, 561 F.3d at 118, is that a plaintiff litigating in the Second Circuit must allege a distinct and palpable injury-in-fact beyond the alleged statutory violation.  *See* 1 Data Sec. & Privacy Law § 9:165, Westlaw ( June 2015) ("[T]he Second and Fourth Circuits have allowed claims to proceed 'only where [plaintiffs] have both statutory and constitutional standing.'").[1]

---

[1] As to whether the Court should stay this case pending the Supreme Court's decision in *Spokeo*, the Court should dismiss the case regardless of how the Supreme Court may rule.  As noted in Section II(B), regardless of disagreement over whether the violation of a *federal* law can suffice for Article III standing, the violation of a *state* law cannot.  That said, if this Court believes standing turns on the *Spokeo* issue, the Court has the inherent authority to temporarily stay proceedings to see what the Supreme Court does in the case before its term concludes.

### B.    Regardless Of What Congress Can Do, <u>State</u> Legislatures Have No Power to Expand The Jurisdiction of Federal Courts.

The courts that have held that a bare statutory violation is sufficient for Article III

purposes have done so based on the power of the United States Congress to regulate federal court

jurisdiction.  It is not surprising, then, that the cases Plaintiffs cite involve federal statutes:

- *Warth* starts from the premise that "Congress may grant an express right of action," 422 U.S. at 501;

- *Austin-Spearman* focuses on the principle that "Congress … can broaden the injuries that can support constitutional standing" when plaintiff alleged a violation of the Video Privacy Protection Act, 98 F. Supp. 3d at 663-66;

- *Donoghue* refers to the "legal right that Congress created," 696 F.3d at 177;

- *Leyse v. Bank of Am.*, No. 09 Civ.7654 JGK, 2010 WL 2382400 (S.D.N.Y. June 14, 2010), notes "Congress created 'legally enforceable bounty system'" *id.* at *3;

- *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346 (S.D.N.Y. 2009), notes that "Congress may create a statutory right," *id.* at 358;

- *Graczyk v. W. Pub. Co.*, 660 F.3d 275 (7th Cir. 2011), relies on the fact that "Congress has defined the relevant injury," *id.* at 278.

*See also Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973) ("Congress may enact statutes

creating legal rights"); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 61 (1963) (federal

constitution); *Fulton v. Goord*, 591 F.3d 37, 42 (2d Cir. 2009) (ADA and the Rehabilitation Act);

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (Fair Housing Act of 1968); *Klimas

v. Comcast Cable Comm'n*, 465 F.3d 271, 273 (6th Cir. 2006) (Cable Comm. Policy Act).

It is one thing for Congress to expand the jurisdiction of the federal courts by redefining

what type of "harm" is necessary for federal jurisdiction.  It would be quite another for a state

legislature to purport to do so.  This is the point Judge Furman made in *Ross v. AXA Equitable*

*Life Ins. Co*., 115 F. Supp. 3d 424 (S.D.N.Y. 2015):

> [T]he limitations on standing serve vital interests going to the role of
> the Judiciary in our system of separated powers, and are founded in
> concern about the proper—and properly limited—role of the courts in
> a democratic society.  It follows that states cannot alter that role
> simply by issuing to private parties who otherwise lack standing a
> ticket to the federal courthouse.  Thus, whether a state law authorizes
> standing, or whether a plaintiff has standing to bring suit in state court
> more generally, is irrelevant to the Article III analysis.

*Id.* at 434 (internal citations omitted); *see also Mangini v. R.J. Reynolds Tobacco Co.*, 793 F.

Supp. 925, 929 (N.D. Cal. 1992).  Both *Ross* and *Mangini* note the unprecedented nature of

Plaintiffs' position.  *See id.* at 929; *Ross*, 115 F. Supp. at 434.  Plaintiffs never seriously address

Judge Furman's analysis.  Instead, they ask the Court simply to disregard it, along with *Mangini*,

as outliers that resulted from what Plaintiffs characterize as "poor briefing."  Opp. at 11.[2]

No matter the quality of that briefing, however, states have no power to expand the

jurisdiction of federal courts.  As the Supreme Court held in *Hollingsworth v. Perry*, 133 S.Ct.

2652 (2013), "States cannot alter [federal courts'] role simply by issuing to private parties who

otherwise lack standing a ticket to the federal courthouse."  *Id.* at 2667.  *See also Robainas*, 2015

WL 5918200, at *6 ("[S]tates may not bypass constitutional or prudential standing

requirements"); *Epstein v. JPMorgan Chase & Co.,*2014 WL 1133567, at *10 (S.D.N.Y. Mar.

21, 2014) ("Plaintiff cannot rely on California law to expand Article III standing"); *LaPierre ex*

*rel. Yorktown v. DiBartolo*, 2013 WL 656313, at *3 (S.D.N.Y. Feb. 21, 2013) ("State courts may

---

[2] As for three other cases holding that states cannot vest federal court with jurisdiction

over harm-less claims, *MAI Systems Corp. v. UIPS*, 856 F. Supp. 538 (N.D. Cal. 1994), *Mortera*

*v. N. Am. Mortgage Co.*, 172 F. Supp. 2d 1240 (N.D. Cal. 2001), and *Toxic Injuries Corp. v.*

*Saftey-Kleen Corp.*, 57 F. Supp. 2d 947 (C.D. Cal. 1999), Plaintiffs simply ignored them.

afford litigants standing to appear where federal courts would not, but the fact that a state court would permit a plaintiff to assert an action has no bearing on … standing under Article III.").

What Plaintiffs are asking this Court to do is unprecedented and would constitute a dramatic expansion of state power. *See* 32A AM. JUR. 2D FEDERAL COURTS § 582, Westlaw (Feb. 2016) ("The states have no power directly to enlarge or contract federal jurisdiction. A state legislature may not waive by statute the constitutional or prudential limitations on standing in federal court and, by way of a state-created right, confer an Article III injury where none would otherwise exist."); 1 FED. PROC., L. ED. § 1:2, Westlaw (Dec. 2015) (same).

Plaintiffs cite four cases to support a contrary position.  But all four involved harm apart from the statutory violation.  In *Beyond Systems, Inc. v. Kraft Foods, Inc.*, 777 F.3d 712 (4th Cir. 2015), the court held that the plaintiff satisfied Article III because it "claimed a harm—receiving spam e-mail." *Id.* at 716.  In *Utah ex rel. Div. of Forestry, Fire & State Lands v. United States*, 528 F.3d 712 (10th Cir. 2008), the parties fought over competing ownership claims to property, which "are sufficient to establish standing." *Id.* at 721.  In *FMC Corp. v. Boesky*, 852 F.2d 981 (7th Cir. 1988), the court found "misappropriation [that] constitutes a distinct and palpable injury that is legally cognizable under Article III's case or controversy requirement." *Id.* at 989-90. And in *Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001), the court *rejected* standing because the plaintiff could not "allege a direct injury." *Id.* at 683.

None of these cases holds that the mere violation of a state statute—without harm—is sufficient for Article III standing.  Properly construed, these cases stand for the unremarkable proposition that federal courts have jurisdiction even if the plaintiff is to be protected from the sufficient harm by a state law.  While the fact that the harm arises under state law is not disqualifying, that harm must still meet Article III requirements, including the federal judiciary's prudential standing limitations. *See Warth*, 422 U.S. at 499.

Plaintiffs' confusion stems from dicta in *Boesky* that refers to an alleged "violation of a state-law right that in itself would suffice to satisfy Article III's injury requirement."  852 F.2d at 993.  But *Boesky* does not hold that the violation of *any* state-law right *automatically* satisfies Article III; it simply holds that the "actual or threatened injury required by Article III *may* exist solely by virtue of … legal rights growing out of state law."  *Id.* (emphasis added).  As Plaintiffs point out, the existence of diversity jurisdiction proves that state-created rights can be adjudicated by federal courts.  But that is true only when those rights redress injuries that are sufficiently concrete under Article III.  Plaintiffs' expansive reading of *Boesky* to suggest that a state can create rights that override Article III limitations would bring it in direct conflict with *Hollingsworth*, 133 S.Ct. at 2667.  The better reading is that the "harm" can arise under state law, but it still has to be a *type* of harm that is sufficient for Article III standing.  As the Ninth Circuit actually wrote in discussing *Boesky*, while "state law … can create such interests," those interests still must "suffice under Article III to demonstrate an injury."  *Cantrell*, 241 F.3d at 684; *see Lee v. American Nat. Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001) ("plaintiff whose cause of action is perfectly viable in state court … may nonetheless be foreclosed from litigating … in federal court, if he cannot demonstrate the requisite injury").

In this case, to identify some form of Article III injury, Plaintiffs break BIPA into its component "statutory rights"—the right to be provided full and accurate disclosures, the right not to have their private information taken or disclosed, and the right to be provided destruction and retention policies—and assert that their effort to vindicate such rights constitutes an injury-in-fact that confers standing.  *See* Opp. at 9.  As a threshold matter, however, "'rights' are not a type of injury by itself, and an allegation that a defendant violated a statute is not sufficient to confer standing."  *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 882 (N.D. Ill. 2014).  The Court must look to the "harm" the right seeks to protect against and determine if that type of

harm is justiciable under Article III.  Plaintiffs have failed to show that the types of "harms"

BIPA addresses are the types of harms that suffice for standing under Article III.  In reality,

federal courts have consistently rejected the standing sufficiency of those "harms":

- An interest in having "full and accurate" information (whether disclosures or policies)

  has never been deemed constitutionally sufficient.  *See Ross*, 115 F. Supp. 3d at 435

  ("person's abstract interest in accurate information from an entity—without any

  actual or imminent injury arising from the entity's failure to disclose such

  information—does not constitute a 'concrete and particularized' injury sufficient to

  confer a right to sue in federal court"); *United States v. Richardson*, 418 U.S. 166,

  177 (1974) (while the "respondent has a genuine interest" in accurate information, he

  has not alleged that "he is in danger of suffering any particular concrete injury").

- The loss of private information (through collection, disclosure, or otherwise) is also

  not sufficiently "concrete and particularized" and "actual or imminent" for

  constitutional standing.  *Hammond v. Bank of New York Mellon Corp.*, No. 08 Civ.

  6060, 2010 WL 2643307 at *7 (S.D.N.Y. June 25, 2010) (citing *Randolph v. ING Life

  Insurance and Annuity Company*, 486 F. Supp. 2d 1, 7-8 (D.D.C. 2007)).

Plaintiffs argue in essence that, because Illinois created "rights" under BIPA, it does not

matter that those rights redress harms that are not themselves justiciable under Article III.  That

is contrary to law.  And while Congress may (or may not, depending on *Spokeo*) have the

authority to redefine what "harm" means for purposes of Article III standing, the states do not.

### III.     PLAINTIFFS ARE NOT A "PERSON AGGRIEVED" UNDER BIPA

Plaintiffs' right to bring a claim under BIPA also requires them to establish that each is a

"person aggrieved" by the alleged violation.  Eschewing the plain meaning of "aggrieved," as

"having suffered loss or injury," *see* BLACK'S LAW DICTIONARY (9th ed. 2009), Plaintiffs suggest

that "aggrieved" should be construed broadly to mean anyone "who falls within the 'zone of interests' sought to be protected by the statute claimed to have been violated."  Opp. at 11.

Plaintiffs cite *Thompson v. N. Am. Stainless*, 562 U.S. 170 (2011), but that case says the exact opposite.  In *Thompson*, the plaintiff-employee was fired in retaliation against his fiancé, who filed a sex discrimination charge with the EEOC.  The issue was whether the fired employee could be considered a "person aggrieved" under Title VII given that, even though he was the one fired, he was not the person who filed the sex discrimination charge.  The Supreme Court held that "'aggrieved' must be construed more narrowly than the outer boundaries of Article III." *Id.* at 177.  To be "aggrieved," the plaintiff not only had to suffer "injury in fact," the plaintiff *also* had to be within the "zone of interests" of the statute. *Id.* at 176-78.  The Supreme Court held that the plain language excluded "plaintiffs who might technically be injured in an Article III sense but whose interests are unrelated to the statutory prohibitions in Title VII." *Id.* at 178.  Nothing in *Thompson* suggests that the word "aggrieved" does not require injury.  Instead, the Supreme Court added the "zone of interests" inquiry to the injury requirement.[3]

Plaintiffs' reliance on *Mandziara v. Canulli*, 299 Ill. App. 3d 593 (1998), is similarly in error.  The Illinois Court of Appeal never discusses the meaning of the term "person aggrieved,"

---

[3] Plaintiffs also cite *Innovative Health Systems, Inc. v. City of White Plains*, 931 F. Supp. 222, 237 (S.D.N.Y. 1996) and *Loeffler v. Staten Island University Hospital*, 582 F.3d 268 (2d Cir. 2009). *See* Opp. at 12 n.4.  Plaintiffs contend that these cases stand for the proposition that the term "person aggrieved" should be interpreted as broadly as permitted by Article III.  Both cases rely on *Trafficante v. Metropolitan Life Insurance Co.*, 409 U.S. 205 (1972) for that point.  But the Supreme Court in *Thompson* overruled *Trafficante* on this very issue, finding that "this dictum was ill-considered, and we decline to follow it."  562 U.S. at 176.

nor does it even suggest that a person can be "aggrieved" without being harmed.  In that case, the

defendant was an attorney who sought mental health records without following the procedures of

the Illinois Mental Health and Developmental Disabilities Confidentiality Act.  The defendant

tried to escape liability by claiming that he never actually saw the records.  The court rejected

that argument, which had nothing to do with whether harm was necessary.  Harm was not in

dispute in *Mandziara*, given that there was no question documents were obtained pursuant to a

subpoena in violation of the statute, the documents were reviewed by the court, and, as a result of

this review, the plaintiff lost custody of her child.  *Id*. at 601.

There is therefore no basis to deviate from the plain meaning of the term "aggrieved"

which requires some showing of injury.  At the pre-motion conference Plaintiffs suggested that

the liquidated damages provision in BIPA somehow excused them from showing injury.  They

no longer make that argument.  As the Supreme Court held in *Doe v. Chao*, 540 U.S. 614 (2004),

the availability of liquidated damages does not alter the injury requirement.  *Id.* at 625-26.

## IV.    CONCLUSION

Plaintiffs do not have standing under Article III or BIPA to bring this lawsuit.  The Court

should grant the Motion to Dismiss, without leave to amend.

Dated: March 1, 2016                    Respectfully submitted,

By:                                                                    
Robert M. Schwartz

KASOWITZ BENSON TORRES              IRELL & MANELLA LLP
    & FRIEDMAN LLP                  Robert M. Schwartz (*pro hac vice*)
Jed I. Bergman                      Victor Jih (*pro hac vice*)
Aaron H. Marks                      Nathaniel Lipanovich  (*pro hac vice*)
1633 Broadway                       Molly Russell (*pro hac vice*)
New York, NY 10019                  1800 Avenue of the Stars, Suite 900
                                    Los Angeles, CA 90067

*Attorneys for Defendant Take-Two Interactive Software, Inc.*