UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANESSA VIGIL and RICARDO VIGIL, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>          Defendant. | Civil Action 1:15-cv-08211 (JGK)(KNF) |

**MEMORANDUM OF LAW
OF DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE, INC.
IN SUPPORT OF MOTION TO DISMISS
THE SECOND AMENDED COMPLAINT
OR, IN THE ALTERNATIVE,
TO STRIKE THE CLASS ALLEGATIONS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................... 1

FACTS RELEVANT TO THE MOTION ................................................................... 3

      A.      BIPA ............................................................................................... 3

      B.      Take-Two's NBA Basketball Games And The MyPlayer
             Feature............................................................................................. 3

      C.      Plaintiffs' Use Of NBA 2K15 And The MyPlayer Feature. ............ 5

LEGAL STANDARD................................................................................................. 6

ARGUMENT .............................................................................................................. 6

     I.     Plaintiffs Have Not Alleged A Concrete Injury Under Article III....... 7

      A.      Statements of Buyer's Remorse Do Not Confer Standing
             Because The Alleged Harm Was Never Part of the Contracted-
             For Bargain. ..................................................................................... 7

      B.      Plaintiffs' Assertions That Personal Information Is "Valuable"
             Or Was Misappropriated Do Not Establish Concrete Injury. ................. 9

      C.      Plaintiffs' Other Allegations Do Not Confer Standing Because
             They Are Only Based On A Speculative Increased "Risk" Of
             Future Injury. ................................................................................. 10

     II.    Plaintiffs Lack Statutory Standing Under BIPA. ................................ 13

      A.      Plaintiffs Cannot Sue Under BIPA Because They Are Not
             Aggrieved......................................................................................... 13

      B.      Plaintiffs' Claims Do Not Fall Within BIPA's Zone Of
             Interests............................................................................................ 14

     III.   The Court Should Strike The Class Allegations. ............................... 16

CONCLUSION......................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)....................................................................................................6

*In re Barnes & Noble Pin Pad Litig.*,
   No. 12-cv-8617, 2013 WL 4759588 (N.D. Ill. Sept. 3, 2013).................................9

*Birdsong v. Apple, Inc.*,
   590 F.3d 955 (9th Cir. 2009) ...................................................................................8

*Boelter v. Hearst Commc'ns, Inc.*,
   No. 15-cv-3934, 2016 WL 3369541 (S.D.N.Y. June 17, 2016) ...............................8

*BP Expl. & Oil, Inc.(93-3310) v. U.S. E.P.A.*,
   66 F.3d 784 (6th Cir. 1995) ...................................................................................15

*Clapper v. Amnesty Int'l USA*,
   133 S. Ct. 1138 (2013).................................................................................10, 11, 12

*Dan Caputo Co. v. Russian River Cty. Sanitation Dist.*,
   749 F.2d 571 (9th Cir. 1984) ...........................................................................15, 16

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006)....................................................................................16

*In re DoubleClick Inc. Privacy Litig.*,
   154 F. Supp. 2d 497 (S.D.N.Y. 2001) ....................................................................10

*Gunpowder Riverkeeper v. F.E.R.C.*,
   807 F.3d 267 (D.C. Cir. 2015) .........................................................................15, 16

*Hammond v. Bank of N.Y. Mellon Corp.*,
   No. 08-cv-6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010) .............................12

*Hofmann v. Fifth Generation, Inc.*,
   No. 14-cv-2569, 2015 WL 5440330 (S.D. Cal. Mar. 18, 2015)...............................8

*Katz v. Pershing, LLC*,
   672 F.3d 64 (1st Cir. 2012).....................................................................................12

*Khan v. Children's Nat'l Health Sys.*,
   No. 15-cv-2125, 2016 WL 2946165 (D. Md. May 19, 2016)..............................7, 12

- ii -

**Page**

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
134 S. Ct. 1377 (2014) ...........................................................................14

*In re Literary Works in Elec. Databases Copyright Litig.*,
509 F.3d 116 (2d Cir. 2007), *rev'd and remanded on other grounds sub nom.*
*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ...........................16

*Lleshi v. Kerry*,
No. 14-cv-7412, 2015 WL 5143982 (S.D.N.Y. Sept. 1, 2015) ................6

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .................................................10

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990)................................................................................14

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000).....................................................................6

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
132 S. Ct. 2199 (2012)............................................................................14

*Mazzola v. Roomster Corp.*,
849 F. Supp. 2d 395 (S.D.N.Y. 2012)....................................................18

*Murray v. Time Inc.*,
No. 12-cv-0431, 2012 WL 3634387 (N.D. Cal. Aug. 24, 2012), *aff'd*, 559 F.
App'x 654 (9th Cir. 2014) .........................................................................9

*Nat'l Council of La Raza v. Gonzales*,
468 F. Supp. 2d 429 (E.D.N.Y. 2007) ...................................................12

*Padilla v. Dish Network L.L.C.*,
No. 12-cv-7350, 2013 WL 3791140 (N.D. Ill. July 19, 2013) ...............13

*Reyes v. Checksmart Fin., LLC*,
No. 13-cv-5181, 2014 WL 1618809 (N.D. Cal. Apr. 21, 2014)..............14

*Rivera v. Wyeth-Ayerst Labs.*,
283 F.3d 315 (5th Cir. 2002) ....................................................................9

*In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*,
45 F. Supp. 3d 14 (D.D.C. 2014)..............................................................9

*Simpson v. Cal. Pizza Kitchen, Inc.*,
989 F. Supp. 2d 1015 (S.D. Cal. 2013).....................................................8

**Page**

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016) ...................................................................................1, 7

*Sprint Spectrum L.P. v. Willoth*,
    176 F.3d 630 (2d Cir. 1999) ..........................................................................15, 16

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .................................................................................................13

*Stoops v. Wells Fargo Bank, N.A.*,
    No. 15-cv-0083, 2016 WL 3566266 (W.D. Pa. June 24, 2016) ......................15, 16

*Strautins v. Trustwave Holdings, Inc.*,
    27 F. Supp. 3d 871 (N.D. Ill. 2014) ....................................................................11

*Thompson v. N. Am. Stainless, LP*,
    562 U.S. 170 (2011) .............................................................................................14

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................................6

*In re Trilegiant Corp., Inc.*,
    11 F. Supp. 3d 82 (D. Conn. 2014) ..................................................................6, 18

*Wojchowski v. Daines*,
    498 F.3d 99 (2d Cir. 2007) ....................................................................................6

**Statutes**

47 U.S.C. § 338 ..............................................................................................13, 14

220 Ill. Comp. Stat. 5/22-501 ...................................................................................14

740 Ill. Comp. Stat. 14/5 ..............................................................................3, 15, 16

740 Ill. Comp. Stat. 14/15 .............................................................................................3

740 Ill. Comp. Stat. 14/20 ...............................................................................3, 13, 14

**Rules and Regulations**

Fed. R. Civ. P. 12 .....................................................................................................6

Fed. R. Civ. P. 23 .....................................................................................................6

**Page**

**Other Authorities**

Brian Shea, *NBA 2K16's Face-Scanning Feature Is Still Not Great*, GAME
    INFORMER (Oct. 2, 2015, 6:58 PM)...........................................................................4

James Dator, *NBA 2K15 Scanned My Dog Better Than My Face*, SB NATION
    (Oct. 7, 2014, 2:42 pm)...........................................................................................4

Seth Rosenthal, *The Early NBA 2k15 Face Scanner Results Are Wonderful,*
    *Hideous Monsters*, SB NATION (Oct. 7, 2014, 1:47 am)......................................4

## <u>INTRODUCTION</u>

The Court gave plaintiffs a final opportunity to allege a concrete injury in light of the requirements of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  However, their Second Amended Complaint ("SAC") still fails to do so.   It alleges three new theories of purported harm, but none amounts to a concrete injury and the courts have consistently rejected each one.

First, one of the two plaintiffs (Ricardo Vigil, alone) claims that he would not have purchased the NBA 2K15 video game if he had known that one of its features, if used, would violate BIPA.  Such subjective (and self-serving) statements of buyer's remorse, however, do not constitute concrete injury unless they arose from something the seller actually promised as part of the bargain.  Here, the SAC alleges no promises by Take-Two concerning BIPA or the game's compliance—nor could it because Take-Two made none.  As a result, Mr. Vigil cannot claim that BIPA compliance was part of what he paid for when he bought the game.  Thus, even if he genuinely cared about BIPA compliance, and even if that influenced his purchase decision, his alleged disappointment does not constitute a concrete injury.

Plaintiffs allege next that the supposed biometric data used to create the cartoon-like avatars is "valuable" and that Take-Two misappropriated it.  Those allegations of "value" are too vague and insufficient to confer standing.  To constitute a concrete injury, the plaintiff must allege either that: (a) he had (and has now lost) the ability to sell the data, or (b) defendant sold it.  Plaintiffs did not—and in this case, cannot—allege either of those facts.

Finally, plaintiffs allege an "increased risk" that their biometric data *might* be compromised, which *might* lead to identify theft, which at some future time *might* cause concrete injury.  Though the risk of future harm, in limited cases, can satisfy Article III's concreteness requirement, the Supreme Court has made clear that such future harm cannot be speculative but must be "certainly impending."  The SAC does not come close to meeting that high standard.

As a separate basis to dismiss, plaintiffs' SAC still fails to meet BIPA's own standing requirements, which are even stricter than Article III.  BIPA authorizes a right of action to a person only if he or she has actually suffered an injury that falls within the statute's zone of interests.  A plaintiff who is not "aggrieved" cannot seek damages or an injunction.  Here, not only have plaintiffs failed to allege any actual injury, the types of substitute injuries they allege are not the types of harms BIPA was designed to protect.  BIPA was enacted to protect biometric data that provides access to financial accounts or personal information.  The statute was not designed to regulate a game that creates a non-identifying, cartoon-like avatar of an NBA player that is not used, and cannot be used, to access financial or other personal data.  Nor was BIPA meant to redress benefit-of-the-bargain or lost-value harms that have nothing to do with identity theft or a data breach.

Given plaintiffs' repeated inability to plead a concrete injury, the Court should dismiss the SAC *with* prejudice.  Alternatively, the Court should at least strike the SAC's class allegations.  Although motions to strike class allegations are uncommon, they are appropriate where, as here, there is a clear legal bar to the maintenance of the class.  The Second Circuit does not permit class certification unless every member of the class has standing to bring a claim.  Even if the new allegations were sufficient under Article III and BIPA, by definition they are too individualized to confer standing on the putative class as a whole.  Whether someone regrets purchasing the game, whether they care about BIPA compliance, whether they have tried to sell their biometric information, and whether they face "certainly impending" risk of identity theft are all inherently individualized questions that cannot apply across the entire class.  Permitting class standing based on plaintiffs' new theories of harm would allow individuals without a concrete injury to be part of the class in violation of Second Circuit precedent.  Thus, the Court should either dismiss the SAC or strike its class allegations.

## FACTS RELEVANT TO THE MOTION

### A.      BIPA

Plaintiffs' lawsuit seeks to apply BIPA to Take-Two's NBA 2K15 and NBA 2K16 video games.  *See* SAC ¶ 1.  BIPA is a 2008 Illinois statute that addresses biometrics "used to access finances or other sensitive information."  740 Ill. Comp. Stat. 14/15.  Noting that the "use of biometrics is growing in the business and security screening sectors," the Illinois General Assembly was concerned with safeguarding "financial transactions, including finger-scan technologies at grocery stories, gas stations, and school cafeterias."  *Id.* at 14/5(a), (b), (c).  BIPA regulates the use of biometrics by providing disclosure, consent, and retention requirements for private entities that obtain and/or disseminate biometric identifiers or information.  *See id.*

Unlike other Illinois statutes, BIPA does not permit just anyone to file a lawsuit.  Instead, BIPA limits its private right of action only to those who have been injured—i.e., to "[a]ny person aggrieved."  *Id*. at 14/20.  This requirement limits who can seek damages or injunctive relief under the statute.  *Id.*  A prevailing party who is aggrieved, though, may recover either actual damages or liquidated damages, whichever is greater.  *Id.* (providing $1,000 for negligent violations and $5,000 for intentional or reckless violations).

### B.      Take-Two's NBA Basketball Games And The MyPlayer Feature.

NBA 2K15 and NBA 2K16 are basketball-themed video games developed and published by Take-Two.  SAC ¶ 1, 27.  Both games include a "MyPlayer" feature that permits users to create a personalized basketball avatar.  *See id.* ¶ 27.  There are two ways that users can do this.  A user can create an avatar by manually varying the size and position of its nose, ears, eyes, forehead, eyebrows, mouth, facial hair, and other attributes, and the user can also control characteristics like eye, skin, and hair color.  Alternatively, a user can take a photograph using a camera attached to the game console.  *See id.* ¶¶ 27, 29-31.

The MyPlayer feature enables users to create an avatar in their own likeness or that looks like someone (or something) else.  There is no requirement that the resulting avatar resemble the user.[1]  A user's avatar can vary significantly each time the user creates one, just as a person's photograph can vary from picture to picture.  In fact, the feature will superimpose on the avatar's "face" any photographic image the user supplies, such as a friend's face, the head of a pet dog or cat, vegetables, or space aliens from *Star Wars*:



*See, e.g.*, James Dator, *NBA 2K15 Scanned My Dog Better Than My Face*, SB NATION (Oct. 7, 2014, 2:42 pm), http://www.sbnation.com/lookit/2014/10/7/6935733/nba-2k15-face-scanning-dog-onion-picture-horror-show; Brian Shea, *NBA 2K16's Face-Scanning Feature Is Still Not Great*, GAME INFORMER (Oct. 2, 2015, 6:58 PM), http://www.gameinformer.com/ b/features/archive/2015/10/02/nba-2k16-s-face_2d00_scanning-feature-is-still-not-great.aspx ("NBA 2K16 does not feature any female players, so that might lead you to believe that Kim Wallace's face wouldn't scan into the game particularly well.  You would be correct."); Seth Rosenthal, *The Early NBA 2k15 Face Scanner Results Are Wonderful, Hideous Monsters*, SB

---

[1] Plaintiffs did not attach images of their avatars to the FAC.  Without Plaintiffs' account information, Take-Two cannot identify Plaintiffs' avatars and show them to the Court.

NATION (Oct. 7, 2014, 1:47 am), http://www.sbnation.com/lookit/2014/10/7/6933751/the-nba-2k15-face-scanner-xbox-ps4.

There is also no requirement that the person creating an avatar be the purchaser of the game or registered account holder, as opposed to a friend or family member who has access to the device on which the game is installed.  *See*, *e.g.*, SAC ¶ 40 (plaintiff Vanessa Vigil made her MyPlayer avatar on a console and game purchased, installed, and set up by her brother).

Once a user has created an avatar, if the user opts to play in the game's multiplayer mode, the game will show the avatar to both the user and to the other, remotely-located player(s) that participate(s) in the multiplayer game.  *See id.* ¶ 31.

The MyPlayer avatar can be used only for entertainment purposes, and the avatar's appearance is not verifiably linked to any person or account.  *See id.* ¶¶ 39-44 (describing how plaintiffs used their MyPlayer avatars in a video game).  For these and other reasons, the output of the MyPlayer feature is not personally identifying biometric data.

Take-Two does not sell or make any other use of the avatar data.

**C.   Plaintiffs' Use Of NBA 2K15 And The MyPlayer Feature.**

Both plaintiffs claim to have played NBA 2K15 on Mr. Vigil's PlayStation 4.  *See id.* ¶¶ 39-40.  Mr. Vigil alleges that he purchased NBA 2K15.  *Id.* ¶ 39.  He alleges that he photographed his face to create an avatar and that third parties saw his avatar when he played in multiplayer mode.  *See id.* ¶¶ 41-45.

Plaintiff Vanessa Vigil did not purchase NBA 2K15.  *Id.* ¶ 40.  She alleges instead that she photographed herself using her brother's game to create her avatar that third parties also saw when she played in multiplayer mode.  *See id.* ¶¶ 41-45.  But because she played on Mr. Vigil's console, the avatar was not associated with her or with an account in her name.  *See id.* ¶ 40.

Both plaintiffs consented to the recording and disclosure of their avatars, including in multiplayer games. *Id.* ¶¶ 28, 41.  Each plaintiff nonetheless seeks $5,000 from Take-Two under BIPA's liquidated damages provision, plus millions of dollars more, at a rate of $5,000 for each class member on whose behalf they purport to sue.  *See id.* ¶¶ 64, 80.

## LEGAL STANDARD

Dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is appropriate where the Court determines that it "lacks the constitutional or statutory power to adjudicate the case." *Lleshi v. Kerry*, No. 14-cv-7412, 2015 WL 5143982, at *2 (S.D.N.Y. Sept. 1, 2015) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  As the party invoking this Court's jurisdiction, plaintiffs must "prov[e] by a preponderance of the evidence" that this Court has jurisdiction to hear their claims.  *Makarova*, 201 F.3d at 113.  The plaintiffs must also state a valid claim for relief, or dismissal under Rule 12(b)(6) is appropriate.  *See Wojchowski v. Daines*, 498 F.3d 99, 106 (2d Cir. 2007).  Though the Court must accept the allegations in the SAC as true, "mere conclusory statements" that lack supporting factual allegations need not be taken as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, Rules 12(f) and 23(d)(1)(D) allow the Court "to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal. 2010).  Motions to strike under Rules 12(f) and 23(d)(1)(D) are proper where there is a "bar to the class proceeding," such as a statutory restriction or lack of standing that prevents the maintenance of a class as a matter of law.  *See In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 113 (D. Conn. 2014) (striking class allegations before discovery based on a "statutory restriction").

## ARGUMENT

The Court should dismiss plaintiffs' SAC on two grounds: (I) plaintiffs have not alleged a concrete injury, and thus lack Article III standing; and (II) plaintiffs cannot meet the stricter standing requirement under BIPA because they are not "aggrieved" and because their claimed injuries do not fall within BIPA's zone of interest. Alternatively, if the Court does not dismiss the case, it should strike the class allegations because the putative class would lack standing.

## I.   Plaintiffs Have Not Alleged A Concrete Injury Under Article III.

"Article III standing requires a concrete injury, even in the context of a statutory violation."[2] *Spokeo*, 136 S. Ct. at 1549. "Concrete" means that an injury is "'real', and not 'abstract.'" *Id.* at 1548. Plaintiffs were given leave to allege concrete injury, but their new allegations fail to establish any concrete injuries beyond the alleged statutory violation itself, which, as the Court recognized at the June 29 hearing, is insufficient as a matter of law. *See id.* at 1549 (plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III").

### A.   Statements of Buyer's Remorse Do Not Confer Standing Because The Alleged Harm Was Never Part of the Contracted-For Bargain.

Ricardo Vigil (but not Vanessa Vigil) alleges that, had he "known, prior to making his purchase of the NBA 2K15 video game, that Take Two would collect, indefinitely store, and/or disseminate his unique biometric identifiers and/or biometric information without his informed written consent in connection with his use of the 'My Player' feature," he "would not have

---

[2] *Spokeo* involved the violation of a federal statute, but the Article III requirement of a concrete injury applies also to cases involving state statutes. *See Khan v. Children's Nat'l Health Sys.*, No. 15-cv-2125, 2016 WL 2946165, at *7 (D. Md. May 19, 2016).

purchased the NBA 2K15 video game, for any price."  Because he has "had no option to return the video game for a monetary refund," he claims "tangible, monetary harm."  SAC ¶ 55.

Even if true, however, Mr. Vigil's regret in buying 2K15 does not constitute "concrete injury" unless BIPA compliance was part of his contracted-for bargain with Take-Two.  A plaintiff cannot state injury by simply claiming that he would not have bought or would have paid less for a product.  The law requires such conduct to be in reliance on specific representations by the defendant.  *See Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) (no standing because plaintiffs "do not allege that Apple made any representations that iPod users could safely listen to music" and thus "plaintiffs' alleged injury in fact is premised on the loss of a 'safety' benefit that was not part of the bargain to begin with"); *Hofmann v. Fifth Generation, Inc.*, No. 14-cv-2569, 2015 WL 5440330, at *6 (S.D. Cal. Mar. 18, 2015) (to allege injury, plaintiff must allege both that he would have made a different purchasing decision and a representation); *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1022-23 (S.D. Cal. 2013) (no standing where "purchases were not made on the basis of false or misleading information").[3]

---

[3] At the June 29 hearing on the prior motion to dismiss, plaintiffs cited *Boelter v. Hearst Commc'ns, Inc.*, No. 15-cv-3934, 2016 WL 3369541 (S.D.N.Y. June 17, 2016).  The plaintiffs there alleged that they would "not have been willing to pay as much, if at all," for a magazine subscription "had [they] known that their information would not be kept private."  *Id.* at *2. *Boelter* is of limited guidance because the opinion simply stated the conclusion that there is standing without explanation or authority; nor does it indicate what representations defendants had made concerning privacy.  *Id.* at *3.  But the opinion did not need to, because the court had already found a concrete injury based on defendant's sale of plaintiffs' information to data mining companies that had inundated plaintiffs with spam emails.  *Id.*  That did not occur here.

Here, plaintiffs do not allege any representations related to the collection and storage of biometric information.  Without such representations, Mr. Vigil cannot claim that biometric compliance was part of his bargain with Take-Two.  All that he alleges is that NBA 2K15's MyPlayer feature was advertised as allowing him "to create a personalized basketball player," and that it was a material motivation for his decision to purchase the game.  SAC ¶ 53.  Based on his own allegations, Mr. Vigil was not injured because he received exactly what he bargained for: the NBA 2K15 video game with a MyPlayer feature.  *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320-21 (5th Cir. 2002) ("By plaintiffs' own admission, [plaintiff] paid for an effective pain killer, and she received just that—the benefit of her bargain.").

Notably, Mr. Vigil does not allege that he even knew that the MyPlayer feature included an option to create an avatar by photographing a person's face.  To the contrary, he alleges that he did *not* know if any biometric data would be collected.  SAC ¶ 54.  Thus, Mr. Vigil could not have had any expectations when he bought the game about biometric collection and storage.  He has only an allegation that he is unhappy that Take-Two allegedly did not follow BIPA.  That is not a concrete injury.  And, as noted above, his sister does not (and as a non-purchaser, cannot) make comparable allegations.  Thus, neither plaintiff has Article III standing.

### B.     Plaintiffs' Assertions That Personal Information Is "Valuable" Or Was Misappropriated Do Not Establish Concrete Injury.

Plaintiffs claim that Take-Two misappropriated their "valuable" biometric data.  *See, e.g.*, SAC ¶ 58.  But to establish a concrete injury based on the "value" of one's personal information, a plaintiff must allege that he or she intended to sell the information and that defendant's actions devalued the information.  *See, e.g.*, *In re Sci. Applications Int'l Corp. (SAIC) Backup Tape Data Theft Litig.*, 45 F. Supp. 3d 14, 30 (D.D.C. 2014) ("Plaintiffs do not contend that they intended to sell this information on the cyber black market in the first place, so it is uncertain how they were injured by this alleged loss"); *In re Barnes & Noble Pin Pad Litig.*, No. 12-cv-8617, 2013 WL

4759588, at *5 (N.D. Ill. Sept. 3, 2013) ("Actual injury of this sort is not established unless a plaintiff has the ability to sell his own information and a defendant sold the information."); *Murray v. Time Inc.*, No. 12-cv-0431, 2012 WL 3634387, at *4-5 (N.D. Cal. Aug. 24, 2012), *aff'd*, 559 F. App'x 654 (9th Cir. 2014) ("Plaintiff also has not alleged that … he would have attempted to sell his information and lost the opportunity to do so.").

Personal information generally does not constitute property that can be misappropriated, and allegations of mere "value" are insufficient to overcome that. *See, e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1030 (N.D. Cal. 2012) (allegations that data including credit card information was "valuable property owned by plaintiffs" did not change the fact that "the weight of authority holds that a plaintiff's 'personal information' does not constitute property"); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 525 (S.D.N.Y. 2001) ("[W]e are unaware of any court that has held the value of this collected information constitutes damage to consumers or unjust enrichment to collectors."). These cases stand for the common sense proposition that a plaintiff has not been injured if his or her information has not been reduced in value or if he or she never intended to sell the information in the first place.

Although plaintiffs state that their biometric identifiers and information are "valuable personal property," they do not allege that they intended to sell this information and they do not allege that Take-Two did anything to reduce its supposed "value." *See* SAC ¶ 58. Indeed, it is hard to see how plaintiffs' avatars can be valuable, *identifying* information when multiple avatars can be associated with the same account and an avatar can look like anyone or anything. *See id.* ¶¶ 39-40. In any event, conclusory claims of "value" and "misappropriation" are not sufficiently concrete and cannot confer standing. *See Low*, 900 F. Supp. at 1030.

**C.      Plaintiffs' Other Allegations Do Not Confer Standing Because They Are Only Based On A Speculative Increased "Risk" Of Future Injury.**

A risk of future injury is concrete only when that injury is "certainly impending." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). "'Allegations of possible future injury' are not sufficient," and speculative allegations, "which rel[y] on a highly attenuated chain of possibilities, do[] not satisfy the [certainly impending] requirement." *Clapper*, 133 S. Ct. at 1147. Under *Clapper*, "the threshold of probability for injuries that have not actually occurred is high." *Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 878 (N.D. Ill. 2014) (rejecting standing based on increased risk of harm).

Plaintiffs fail to meet that standard. They allege only the increased *risk* of future identity theft. Specifically, they allege that: (1) their biometric data and corresponding identifying information are stored on Take-Two's servers (which is, in fact, not true but will be assumed so for purposes of this motion), (2) those servers are at "risk" of a data breach, (3) *if* there is a data breach that includes plaintiffs' data then plaintiffs are at "risk" of identity theft, and (4) *if* plaintiffs' identities are stolen they may suffer harm. *See* SAC ¶¶ 61-62. This is exactly the type of mere-increased-risk-argument that the Supreme Court rejected in *Clapper*. There, plaintiffs' risk of harm was based on the possibility that: (1) the government would target communications involving plaintiffs' foreign contacts, (2) the government would invoke a specific statute to authorize surveillance of those communications, (3) a court would authorize that surveillance, (4) the government would succeed in intercepting the communications, and (5) the intercepted communications would include communications with plaintiffs. *Id.* at 1149-50.

As in *Clapper*, plaintiffs' speculation creates a "highly attenuated chain of possibilities," insufficient for standing. 133 S. Ct. at 1147. Plaintiffs do not allege an actual (or even attempted) data breach, or a misuse of their information by a third party, or that Take-Two has attempted to improperly sell or disclose their biometric data. There is no allegation that anyone

- 11 -

even wants plaintiffs' avatar data, that anyone is targeting Take-Two's servers, that someone is likely to successfully penetrate Take-Two's servers, that a data breach would likely contain plaintiffs' data, or that their avatar data can be used to engage in identity theft.  Plaintiffs allege no "certainly impending" harm; their argument for "increased harm" is entirely speculative.

Courts have held that risks far greater than those alleged here fail to meet the *Clapper* standard.  Even when there has been an actual data breach (as opposed to the hypothetical one plaintiffs suggest might occur), courts have held that the risk of identity theft is not "certainly impending" without allegations of the "actual misuse of the personal data or facts indicating a clear intent to engage in such misuse with plaintiffs' data."  *Khan*, 2016 WL 2946165, at *6; *see Hammond v. Bank of N.Y. Mellon Corp*., No. 08-cv-6060, 2010 WL 2643307, at *6 (S.D.N.Y. June 25, 2010) (surveying case law and concluding that allegations of increased risk "where data have been lost and where data have been stolen" fail to establish standing "because their claims are future-oriented, hypothetical, and conjectural").  Without any actual breach here, plaintiffs' allegations are even more hypothetical and too speculative to support standing.  *See Nat'l Council of La Raza v. Gonzales*, 468 F. Supp. 2d 429, 433-35, 44 (E.D.N.Y. 2007) ("speculation that … some unauthorized party may access plaintiffs' [information] in violation of a plaintiff members' privacy right does not satisfy the requirement that plaintiffs identify an 'actual or imminent,' 'concrete and particularized' injury").

Plaintiffs claim further that, because of this alleged risk of harm, they "have become weary of participating in biometrics-facilitated transactions, and have in fact refrained from participating in biometric-facilitated transactions."  SAC ¶ 61.  Here again, this does not constitute concrete injury because plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."  *Clapper*, 133 S. Ct. at 1151; *see also Katz v. Pershing, LLC*, 672 F.3d 64, 79 (1st

Cir. 2012) ("[w]hen an individual alleges that her injury is having to take or forebear from some action, that choice must be premised on a reasonably impending threat").

## II.   Plaintiffs Lack Statutory Standing Under BIPA.

Even if plaintiffs had Article III standing, they may bring a claim under BIPA only if they have been actually injured (i.e., "aggrieved"), and only if the injury falls within the statute's zone of interests.  The lack of statutory standing is an independent, and equally dispositive, ground for dismissal.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n.2 (1998).

### A.   Plaintiffs Cannot Sue Under BIPA Because They Are Not Aggrieved.

BIPA allows only an "aggrieved" plaintiff to bring a claim for injunctive relief or damages.  740 Ill. Comp. Stat. 14/20.  As a result, plaintiffs must have been actually injured— not merely at increased risk of injury—to sue under the statute.  As discussed in Section I, plaintiffs have not alleged that they suffered any actual injury.

BIPA's "aggrieved" limitation is similar to the one found in the federal Satellite Home Viewer Extension and Reauthorization Act ("SHVERA").  In *Padilla v. Dish Network L.L.C.*, No. 12-cv-7350, 2013 WL 3791140, at *1-3 (N.D. Ill. July 19, 2013), the plaintiff alleged that the defendant's retention of his personally identifiable information violated SHVERA Section 338i, which provides a claim to "[a]ny person aggrieved by any act of a satellite carrier in violation of this section."  47 U.S.C. § 338(i)(7).  The court held that a person is not "aggrieved" under that statute when their personal information has been only retained and when they have experienced no actual harm.  2013 WL 3791140, at *5.  Because the statute provides that "an 'aggrieved' person may recover 'actual damages but not less than liquidated damages' of at least $1,000," the court dismissed the plaintiff's damages claim, holding the plaintiff was not "aggrieved" and could not recover even statutory damages without plausibly alleging actual damages.  *Id.*  The court did permit the plaintiff to pursue injunctive relief because the

"aggrieved" requirement under SHVERA applied only to the damages relief.  Here, however,

BIPA provides that only an "aggrieved" person can seek either damages or an injunction.

*Compare* 47 U.S.C. § 338(i)(7), *with* 740 Ill. Comp. Stat. 14/20.[4]  Because plaintiffs are not

aggrieved, they lack statutory standing for both BIPA remedies.

      **B.**      **Plaintiffs' Claims Do Not Fall Within BIPA's Zone Of Interests.**

Statutory standing also requires that a plaintiff's alleged injury come within the statute's

"zone of interests."  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377,

1386-87 (2014).  Under the zone-of-interests test, "[t]he interest [the plaintiff] asserts must be

'arguably within the zone of interests to be protected or regulated by the state' that [the plaintiff]

says was violated."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132

S. Ct. 2199, 2210 (2012) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S.

150, 153 (1970)).  Statutes that use the term "aggrieved," such as BIPA, explicitly incorporate

the zone-of-interests test.  *See, e.g.*, *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 177 (2011)

(use of the term "aggrieved" in Title VII of the federal Civil Rights Act of 1964 incorporates the

zone-of-interests test); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) (same with

regard to the federal Administrative Procedure Act); *Reyes v. Checksmart Fin., LLC*, No. 13-cv-

---

[4] In contrast to BIPA, other Illinois privacy statutes award damages without a showing of actual

injury.  For example, the "Customer Service and Privacy Protection" of Illinois' Cable and Video

Customer Protection Law provides that  "*[a]ny customer*, the Attorney General, or a local unit of

government may pursue alleged violations of this Act by the cable or video provider in a court of

competent jurisdiction."  220 Ill. Comp. Stat. 5/22-501 (emphasis added).  Unlike that law, BIPA

explicitly limits damages to "[a]ny person *aggrieved*," which evidences the General Assembly's

intent to limit the recovery of damages under BIPA to those who have sustained an actual injury

as a result of a wrongful disclosure or retention.  740 Ill. Comp. Stat. 14/20 (emphasis added).

5181, 2014 WL 1618809, at *3 (N.D. Cal. Apr. 21, 2014) (same with regard to California's Deferred Deposit Transaction Law).

The "zone of interest" analysis requires the Court to scrutinize closely the alleged harm to confirm that it is the type the legislature intended to address.  For example, courts regularly hold that a plaintiff cannot vindicate its economic interests under environmental statutes because they are not intended to protect a plaintiff's financial interests.  *See, e.g.*, *Sprint Spectrum L.P. v. Willoth*, 176 F.3d 630, 647 (2d Cir. 1999) (noting that "[e]conomic injury is not by itself within SEQRA's zone of interests"); *Gunpowder Riverkeeper v. F.E.R.C.*, 807 F.3d 267, 274 (D.C. Cir. 2015) ("The zone of interests protected by the NEPA is, as its name implies, environmental; economic interests simply do not fall within that zone…. [A plaintiff] must assert an environmental harm in order to come within the relevant zone of interests."); *BP Expl. & Oil, Inc.(93-3310) v. U.S. E.P.A.*, 66 F.3d 784, 803 (6th Cir. 1995) (holding that an economic interest alone does not fall within the Clean Water Act's zone of interests); *Dan Caputo Co. v. Russian River Cty. Sanitation Dist.*, 749 F.2d 571, 575 (9th Cir. 1984) (same).

The same is true for privacy statutes.  Courts have found that economic interests do not fall within the zone of interests of privacy statutes, such as the federal Telephone Consumer Protection Act, which protects "privacy, peace, and quiet."  *See Stoops v. Wells Fargo Bank, N.A.*, No. 15-cv-0083, 2016 WL 3566266, at *15 (W.D. Pa. June 24, 2016) (quoting *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 326 (3d Cir. 2015)).

Here, the types of harms that plaintiffs allege in the SAC are not the types of harms BIPA was designed to address.  740 Ill. Comp. Stat. 14/5(a)-(g).  In enacting BIPA, the Illinois General Assembly was responding to the use of biometrics in connection with "financial transactions and security screenings" and was concerned with "biometric-facilitated financial transactions."  *Id.* at 14/5(a)-(b).  The legislature was worried about the use of biometrics "to access finances or other

sensitive information," because, once compromised, the individual "is at heightened risk for identity theft." *Id.* at 14/5(c). Thus, BIPA is focused on "the use of biometrics when such information is tied to finances and other personal information." *Id.* at 14/5(d).

The SAC does not allege that any financial or personal information has been compromised. Nor does it allege that a plaintiff's identity has been stolen. The most the SAC alleges is a contractual interest in not receiving the "benefit of the bargain" or a quasi-property interest in the economic "value" of a face scan. Even if these allegations constitute an injury (which they cannot, for the reasons explained above), this economic harm is not the type of privacy or identity theft harms that BIPA was designed to address. As with the environmental and privacy statutes, nothing in the text or history of BIPA indicates that economic interests, untethered to a privacy interest, are cognizable alone. *See Gunpowder Riverkeeper*, 807 F.3d at 274; *Sprint*, 176 F.3d at 647; *Dan Caputo,* 749 F.2d at 575; *Stoops*, 2016 WL 3566266, at *15. Thus, plaintiffs' alleged economic injuries do not fall within BIPA's zone of interests. Plaintiffs' allegations confer neither standing under Article III nor standing under BIPA.

## III.   The Court Should Strike The Class Allegations.

In the Second Circuit, every member of a proposed class must have Article III standing for the court to have jurisdiction. *See In re Literary Works in Elec. Databases Copyright Litig.*, 509 F.3d 116, 126 (2d Cir. 2007), *rev'd and remanded on other grounds sub nom. Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) (applying "Article III's jurisdictional requirements to each member of a class"). As the court held in *Denney v. Deutsche Bank AG*, courts cannot certify classes "that contain[] members lacking Article III standing." 443 F.3d 253, 264 (2d Cir. 2006).

The injuries alleged in the SAC, by their very nature, are highly individualized and not capable of being established for the class using evidence that applies to the class as a whole:

- As part of Mr. Vigal's "benefit of the bargain" theory, he claims that, in buying NBA 2K15, the avatar creation feature was a material motivation for his purchase. He claims that he was unaware of the scan-based aspect of the feature. And he claims that he would not have bought NBA 2K15 had he known that Take-Two would allegedly collect and retain his biometric data. SAC ¶¶ 53-55, 61-62.

- As part of plaintiffs' theories that Take-Two misappropriated their "valuable" information and that there is a "risk" of future harm, the existence of any harm turns on whether a putative class member: (a) created an avatar that bore a reasonable resemblance, (b) created an avatar that was associated with his or her own account (as opposed to someone else's account, as is the case with co-plaintiff Vanessa Vigil), (c) attempted to sell his or her biometric data, (d) has a current or future opportunity to enter into biometric-facilitated transactions, and (e) intended, absent the alleged BIPA violation raised in the complaint, would have engaged in such biometric-facilitated transactions, and (f) would refrain to engaging in biometric-facilitated transactions as a result of the alleged BIPA violation raised in the complaint. *Id.* ¶¶ 40-41, 61.

None of these alleged injuries can apply to everyone in a proposed class of all Illinois residents who used the optional scan-based feature in NBA 2K15 or NBA 2K16. *See id.* ¶ 63. On the face of the pleading, it is necessarily the case that the facts for these numerous elements of standing will be specific to each member of the class and not subject to common evidence.

Plaintiff Vanessa Vigil's own allegations highlight this class standing problem: Ms. Vigil cannot allege that she failed to receive the benefit of any bargain for the game because she did not purchase it. And because she created her avatar on someone else's device, her avatar is associated an account held by someone else and, by definition, contains no information about her. *See id.* ¶¶ 40-41, 53. As to the six separate elements of standing related to

- 17 -

"misappropriation," there is no way to know whether Ms. Vigil satisfies them without examining the facts specific to her.  The same is necessarily the case for everyone else in the proposed class.

Though motions to strike class allegations are normally not favored, *see Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012), they are appropriate when there is a jurisdictional bar to maintaining the class.  *See Trilegiant*, 11 F. Supp. 3d at 113 (threshold inquiries are properly decided on a motion to strike to class allegations).  Because the SAC bases plaintiffs' standing on highly individualized harms, the class will include persons who lack plaintiffs' individual circumstances, and thus lack standing and cannot proceed.  There is no need to engage in discovery and further briefing to address and resolve this incurable impediment to class certification.  And doing so would waste a monumental amount of Court and party time and resources.  If the Court does not dismiss the SAC, it should strike the class allegations now.

<u>CONCLUSION</u>

For the foregoing reasons, Take-Two respectfully requests that the Court dismiss the SAC with prejudice, or, in the alternative, strike the class allegations.

Dated: July 29, 2016                              Respectfully submitted,

By: _____
                                                      Robert M. Schwartz

KASOWITZ BENSON TORRES                    IRELL & MANELLA LLP
  & FRIEDMAN LLP                                 Robert M. Schwartz (rschwartz@irell.com)
Jed I. Bergman (jbergman@kasowitz.com)       Victor Jih (vjih@irell.com)
Aaron H. Marks (amarks@kasowitz.com)         Nathaniel Lipanovich
1633 Broadway                                     (nlipanovich@irell.com)
New York, NY 10019                               Molly Russell (mrussell@irell.com)
(212) 506-1700                                    Derek R. Flores (dflores@irell.com)*
                                                  1800 Avenue of the Stars, Suite 900
                                                  Los Angeles, CA 90067
*Pro Hac Vice* Pending                            (310) 203-7535

*Attorneys for Defendant*
*Take-Two Interactive Software, Inc.*

- 18 -