UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANESSA VIGIL and RICARDO VIGIL, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br> v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>   Defendant. | Civil Action 1:15-cv-08211 (JGK)(KNF) |

**<u>REPLY</u> MEMORANDUM OF LAW**
**OF DEFENDANT TAKE-TWO INTERACTIVE SOFTWARE, INC.**
**IN SUPPORT OF MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**
**OR, IN THE ALTERNATIVE,**
**TO STRIKE THE CLASS ALLEGATIONS**

**TABLE OF CONTENTS**

**Page**

I. Plaintiffs Do Not Have Article III Standing. ................................................................... 2

    A. A Violation of BIPA, By Itself, Does Not Confer Article III Standing ................ 2

        1. Plaintiffs Fail To Allege A *Tangible* Concrete Harm. .............................. 2

        2. Plaintiffs Fail To Allege An *Intangible* Concrete Harm. .......................... 4

            a. The Illinois Legislature Did Not Elevate BIPA Violations Into New, Intangible Harms. ....................................... 4

            b. Plaintiffs' Alleged "Informational" Injuries Are Not Concrete. ................................................................................... 4

    B. Plaintiffs' New Allegation of "Monetary Harm" Does Not Suffice. ..................... 6

II. Plaintiffs Lack Statutory Standing Under BIPA. ............................................................. 7

    A. BIPA Requires That Plaintiffs Be Harmed To Have Statutory Standing. ............. 7

    B. Plaintiffs Are Not Within BIPA's Zone of Interests ............................................. 8

III. Plaintiffs Cannot Establish Class-wide Standing ............................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Attias v. CareFirst, Inc.*,
  No. 15-cv-0882, 2016 WL 4250232 (D.D.C. Aug. 10, 2016) ................................................... 3

*Boelter v. Hearst Commc'ns, Inc.*,
  No. 15-cv-3934, 2016 WL 3369541 (S.D.N.Y. June 17, 2016) ............................................... 7

*Church v. Accretive Health, Inc.*,
  No. 15-15708, 2016 WL 3611543 (11th Cir. July 6, 2016) ..................................................... 5

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ............................................................................................... 9, 10

*Duqum v. Scottrade, Inc.*,
  No. 15-cv-1537, 2016 WL 3683001 (E.D. Mo. July 12, 2016) ............................................... 6

*Dwyer v. Am. Exp. Co.*,
  652 N.E.2d 1351 (Ill. Ct. App. 1995) ...................................................................................... 3

*Fed. Elec. Comm'n v. Akins*,
  524 U.S. 11 (1998) ................................................................................................................... 4

*Gubala v. Time Warner Cable, Inc.*,
  No. 15-cv-1078, 2016 WL 3390415 (E.D. Wis. June 17, 2016) ............................................. 6

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ................................................................................................................. 5

*In re Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006), *decision clarified on denial of reh'g*, 483 F.3d 70
  (2d Cir. 2007) ......................................................................................................................... 10

*Mandziara v. Canulli*,
  701 N.E.2d 127 (Ill. App. Ct. 1998) .................................................................................... 7, 8

*McCollough v. Smarte Carte, Inc.*,
  No. 16-cv-3777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) ............................................. 5, 8

*Mgmt. Ass'n for Private Photogrammetric Surveyors v. United States*,
  467 F. Supp. 2d 596 (E.D. Va. 2006) ...................................................................................... 9

*In re Nickelodeon Consumer Privacy Litig.*,
  No. 15-1441, 2016 WL 3513782 (3d Cir. June 27, 2016) ....................................................... 5

*Public Citizen v. Dep't of Justice*,
    491 U.S. 440 (1989)...........................................................................................................4

*Smith v. Ohio State Univ.*,
    No. 15-cv-3030, 2016 WL 3182675 (S.D. Ohio June 8, 2016)..................................6

*Spokeo Inc. v. Robins*,
    136 S. Ct. 1540 (2016)............................................................................................... *passim*

*Thomas v. FTS USA, LLC*,
    No. 13-cv-0825, 2016 WL 3653878 (E.D. Va. June 30, 2016) ..................................5

*Thompson v. N. Am. Stainless, LP*,
    562 U.S. 170 (2011)...........................................................................................................7

*United States v. Frank*,
    156 F.3d 332 (2d Cir. 1998)...........................................................................................6, 7

*United States v. Novak*,
    443 F.3d 150 (2d Cir. 2006)...........................................................................................6, 7

*United States v. Schwartz*,
    924 F.2d 410 (2d Cir. 1991)...........................................................................................6, 7

*United States v. Walker*,
    191 F.3d 326 (2d Cir. 1999)...........................................................................................6, 7

*Wachovia Bank, N.A. v. Burke*,
    414 F.3d 305 (2d Cir. 2005), *cert. denied*, 550 U.S. 913 (2007).............................4

**Statutes**

740 Ill. Comp. Stat. 14/5........................................................................................................9

740 Ill. Comp. Stat. 14/20......................................................................................................4

765 Ill. Comp. Stat. 1075/5....................................................................................................2

765 Ill. Comp. Stat. 1075/10..................................................................................................2

765 Ill. Comp. Stat. 1075/15..................................................................................................2

765 Ill. Comp. Stat. 1075/35..................................................................................................2

**Other Authorities**

Restatement (Second) of Torts § 652C ...............................................................................3

# INTRODUCTION

Take-Two's NBA video game does not violate BIPA.  The Court can dispose of the case now, however, without addressing that issue.  After *Spokeo* held that a bare statutory violation is insufficient to confer standing, the Court gave Plaintiffs a final chance to plead "concrete" harm.  Although Plaintiffs added a few paragraphs to the Complaint, their Opposition shows that even they do not believe that these new allegations make a difference.  Plaintiffs instead reargue the prior motion to dismiss, claiming again that the "violations of BIPA … without any additional allegations of harm" confer Article III standing.  But merely re-labeling these bare procedural violations as "property" and "informational" harms does not transform them into "concrete" injuries.  Further, the Illinois legislature never elevated a BIPA violation to the status of a *per se* injury.  Instead, the legislature decreed that only those who have been actually harmed can sue.

The only newly alleged injury that Plaintiffs defend is Mr. Vigil's claimed "monetary harm."  (Plaintiffs concede that Ms. Vigil has no harm to allege, apart from the statutory violation.)  Mr. Vigil's claim that he would not have paid for the game had he known of any alleged BIPA violation does not constitute a cognizable injury, however, unless BIPA compliance was part of his contracted-for bargain with Take-Two.  It was not.  To get there, Plaintiffs argue that legal compliance is implied in every bargain.  That is not the law.  The case Plaintiffs rely on refutes that.  And even if Mr. Vigil had been denied the benefit of his bargain, he would lack statutory standing because that injury does not fall within BIPA's zone of interest.

It is understandable that Plaintiffs devote so much of their brief to re-arguing that a statutory violation is enough.  Otherwise, Mr. Vigil's additional allegation of "monetary harm" is individualized and cannot support standing for the class.  Plaintiffs say they can redefine the class; but any proposed class based on purchaser intent would suffer from the same defect.  Because this problem cannot be cured, the class allegations should be stricken.

## ARGUMENT

### I.     Plaintiffs Do Not Have Article III Standing.

#### A.     A Violation Of BIPA, By Itself, Does Not Confer Article III Standing.

Plaintiffs cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo*, 136 S. Ct. 1540, 1549 (2016). The Court explained this to Plaintiffs when it allowed them to add allegations of concrete harm:

> THE COURT:  But, when you say that you have concrete harm, your only concrete harm is the fact that a statute has been violated.  And I had thought that *Spokeo* stands for the proposition, among other things, that the violation of a statute alone is not a concrete injury sufficient for Article III, unless you can show a concrete injury, which is something different from simply the statement that the statute was violated.   June 29, 2016 Hr'g Tr. at 22:5-12.  Ex. A.

Plaintiffs nevertheless claim that the statutory violations led to tangible and intangible injuries. Opp. at 3, 6.  Not so.  None of the injuries Plaintiffs have identified are sufficiently concrete.

#### 1.     Plaintiffs Fail To Allege A *Tangible* Concrete Harm.

Plaintiffs assert that they have a generalized "property right" in their "facial information" and thus the use of that information is a tangible injury.  But there is no such property right under BIPA or otherwise.  Plaintiffs rely on the Illinois Right of Publicity Act ("IRPA").  The IRPA "property" right, though, is limited to controlling how an individual's identity is used: (i) in connection with the offering for sale or sale of a goods or services; (ii) for purposes of advertising or promoting goods or services; or (iii) for fundraising.  765 Ill. Comp. Stat. 1075/5 - 10, 35.  If anything, IRPA makes clear that there is no property right to use of a likeness elsewhere, such as in an audio-visual work like a videogame.  *See id.* at 1075/35(b)(1).

The comparison to IRPA confirms that BIPA does not involve property rights.  Unlike IRPA, the legislature provided no declaration in BIPA that it was creating a "property" right. *See* 765 ILCS 1075/15.  Also, IRPA is in Chapter 765 of the state's statutes titled "Property," which includes statutes on real and miscellaneous property, such as IRPA and the Illinois Trade

Secrets Act.  BIPA, on the other hand, is found in Chapter 740, which covers "Civil Liabilities."  That placement shows that the Illinois legislature did deem BIPA to concern "property."

Plaintiffs' "property" argument reduces to their assertion that the data is "valuable."  But as Take-Two explained in the opening brief, to claim concrete harm from the use of personal data, a plaintiff must allege that he or she intended to sell the data and that the defendant's actions devalued it.  *See, e.g., Attias v. CareFirst, Inc.,* No. 15-cv-00882, 2016 WL 4250232, at *5 (D.D.C. Aug. 10, 2016).  Plaintiffs do not address this argument nor does their complaint make such allegations.  Plaintiffs' cases are distinguishable because they all involve misappropriation of likenesses that had commercial or other value.  *See generally* Restatement (Second) of Torts § 652C (comment d) (1977) (June 2016 update).

Instead of establishing loss of value to themselves, Plaintiffs focus on the value to Take-Two.  The allegation that the data enhances the realism of the game does not mean property was misappropriated, nor does it "necessarily follow[]" that Plaintiffs suffered a tangible harm.  Opp. at 5.  Whatever "realism" benefit Take-Two gained (a dubious proposition, given that neither plaintiff plays for an NBA team) does not mean there was value in Plaintiff's face scans or that the value was diminished.  *See Dwyer v. Am. Exp. Co.*, 652 N.E. 2d 1351, 1356 (Ill. Ct. App. 1995) ("Undeniably, each cardholder's name is valuable to defendants. … Defendants create value by categorizing and aggregating these names. [But] defendants' practices do not deprive any of the cardholders of any value their individual names may possess.").

Finally, even if there were a property interest, the gravamen of the BIPA violations is not misappropriation.  There is no allegation that Take-Two "stole" Plaintiffs' "face scans."  To the contrary, Plaintiffs admit that they voluntarily used the MyPlayer feature to create their avatars.  SAC ¶ 41.  The BIPA violations are thus procedural ones, concerning the adequacy of disclosures, the adoption of a retention policy, etc.  They are not misappropriation claims.

### 2. Plaintiffs Fail To Allege An *Intangible* Concrete Harm.

#### a. The Illinois Legislature Did Not Elevate BIPA Violations Into New, Intangible Harms.

Plaintiffs point to the statement in *Spokeo* that Congress has "the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." 136 S. Ct. at 1549. But even assuming the Illinois legislature has the power to articulate new injuries, that does not mean that they did so here. Plaintiffs erroneously assume that the legislature elevated BIPA violations and established them as new harms.

The Illinois legislature never said a BIPA violation, alone, should be deemed a new harm. To the contrary, the use of the term "aggrieved" demonstrates that it expected a plaintiff to show injury and that the violation alone is not enough. 740 Ill. Comp. Stat. 14/20; *cf. Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 322 (2d Cir. 2005), *cert. denied*, 550 U.S. 913 (2007) (no elevation of new harms where "considerations show that Congress did not intend to create federal rights").

#### b. Plaintiffs' Alleged "Informational" Injuries Are Not Concrete.

Plaintiffs' assertion, that "[w]hen a statute requires disclosure of certain information, and a defendant who is required to provide that information fails to do so, the person who was supposed to receive the information has suffered an injury in fact," is incorrect. Opp. at 6. Absent exceptional circumstances,[1] *Spokeo* held that the mere failure to provide required

---

[1] The Supreme Court has recognized informational harm only in situations where a plaintiff specifically requests but is denied information essential for democratic participation. *See Fed. Elec. Comm'n v. Akins*, 524 U.S. 11 (1998) (denial of information about candidates resulted in an "injury" that was "concrete and particular"); *Public Citizen v. Dep't of Justice*, 491 U.S. 440 (1989) (denial of information about judicial nominees resulted in "sufficiently distinct injury to provide standing"). Plaintiffs' other cases also involve harm apart from the nondisclosure of the

disclosures does not confer standing. The Supreme Court gave the following illustration: "A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate." 136 S. Ct. at 1550.

Plaintiffs acknowledge that, to establish an injury based on a failure to receive legally required information, the failure needs to result in or be related to a concrete harm. *See* Opp. at 10. For example, in *Dolan v. Select Portfolio Servicing,* the plaintiff alleged he was injured because the defendant "failed to provide accurate or timely information to Plaintiff ... concerning his account." No. 03-cv-3285, 2016 WL 4099109, at *6 (E.D.N.Y. Aug. 2, 2016). The court dismissed the claim, "reject[ing] the view that *Spokeo* established the proposition that every statutory violation of an 'informational' right 'automatically' gives rise to standing." *Id.* at n.7; *see also In re Nickelodeon Consumer Privacy Litig.,* No. 15-1441, 2016 WL 3513782, at *7 (3d Cir. June 27, 2016) (Under *Spokeo*, "a defendant's failure to comply with a statutory notice requirement" may not actually "cause harm."); *McCollough v. Smarte Carte, Inc.*, No. 16-cv-3777, 2016 WL 4077108 (N.D. Ill. Aug. 1, 2016) (technical BIPA violation is not harm).

Plaintiffs do not allege harm from any technical BIPA violation. They invoke only their abstract interest in privacy by analogizing to other privacy cases—e.g., ones involving the commercial use of someone's likeness in violation of a right of publicity or a Fourth Amendment interest against search and seizure. In comparison, Plaintiffs do not allege that any nondisclosure harmed them: They have not alleged that Take-Two commercially misappropriated their

---

information itself. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) (misrepresentation); *Church v. Accretive Health, Inc.*, 2016 WL 3611543 (11th Cir. July 6, 2016) (emotional harm); *Thomas v. FTS USA, LLC*, 2016 WL 3653878 (standing based on new substantive right over improper use of private information by third party or adverse action).

likeness, or that their biometric information had economic or other actual value that was diminished or sold, or that they falsely endorsed Take-Two's game, or that there was a "highly offensive" prying into their seclusion with phone taps, etc.  Opp. at 8-11, 14.  *See generally Duqum v. Scottrade, Inc.*, 2016 WL 3683001, at *8 (E.D. Mo. July 12, 2016).

Plaintiffs cannot save their allegations of bare statutory violations by analogizing to—but never alleging—established privacy harms that did not happen here.  *See Gubala v. Time Warner Cable, Inc.*, No. 15-cv-1078, 2016 WL 3390415, at *5 (E.D. Wis. June 17, 2016) (no concrete injury under *Spokeo* even where plaintiff alleged that Congress had identified and elevated the violation of subscribers' privacy rights as a harm); *Smith v. Ohio State Univ.,* No. 15-cv-3030, 2016 WL 3182675, at *4 (S.D. Ohio June 8, 2016) (although plaintiffs alleged harm to privacy and misled as to rights, no injury where plaintiffs did not suffer concrete consequential damage).

### B.  Plaintiffs' New Allegation Of "Monetary Harm" Does Not Suffice.

The only allegation of injury that Plaintiffs defend, other than the statutory violation itself, is an economic injury that Mr. Vigil claims to have suffered.  Plaintiffs agree with Take-Two that, for Mr. Vigil's economic injury to be concrete, "BIPA compliance" must have been "part of [his] contracted-for bargain with Take-Two."  *See* Opp. at 15 (quoting Motion at 8).

Plaintiffs' only response is to argue that "compliance with the law and respect for the legal rights of the other part are obligations implicit in every contractual bargain."  *Id.*  To support this assertion, Plaintiffs cite *United States v. Novak*, 443 F.3d 150 (2d Cir. 2006).  *Id.* at 15-16.  Plaintiffs have misread *Novak*, which holds the opposite.  There, the Second Circuit held that an "intent to harm a party to a transaction cannot be found" simply because the "services contracted for were dishonestly completed."  *Novak*, 443 F.3d at 159.  This is true unless honest or lawful performance is specifically made a part of the contract.  The Second Circuit cited three cases—*Schwartz, Frank*, and *Walker*—where the contracting parties had explicitly bargained for

compliance with the law. The Second Circuit did not, as Plaintiffs suggest, find that legal compliance is automatically part of every contract. Rather, it explained that in those three cases, the parties made compliance "a fundamental part of the bargain." *Id.* In contrast, the court held that the defendant's alleged misconduct did not affect an "essential element" of the contracts. *Id.*[2] Similarly, Mr. Vigil does not and cannot allege that BIPA compliance was an express part of his bargain or that Take-Two made any misrepresentations about BIPA compliance.[3]

## II.     Plaintiffs Lack Statutory Standing Under BIPA.

### A.     BIPA Requires That Plaintiffs Be Harmed To Have Statutory Standing.

Plaintiffs once again assert that "person aggrieved" refers *only* to those who "fall[] within the 'zone of interests' sought to be protected by the statute claimed to have been violated." Opp. at 16. Plaintiffs cite *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170 (2011), but that case held the opposite. *Thompson* held that, to be "aggrieved," a plaintiff must not only be within a statute's "zone of interests," but must also suffer "injury in fact." 562 U.S. at 175-78.

Plaintiffs also recite the same flawed argument from their last opposition on how "aggrieved" is defined in Illinois. Opp. at 18-19 (discussing *Mandziara v. Canulli*, 701 N.E.2d

---

[2] A review of those cases confirms Plaintiffs' error. *See United States v. Schwartz*, 924 F.2d 410, 420-21 (2d Cir. 1991) (party expressly required certain performance from other party and demanded assurances of performance); *United States v. Frank*, 156 F.3d 332, 335 (2d Cir. 1998) (parties expressly contracted for the service and paid for it); *United States v. Walker*, 191 F.3d 326, 335 (2d Cir. 1999) (parties misrepresented the services they were providing).

[3] Plaintiffs' citation to *Boelter v. Hearst Commc'ns, Inc.*, No. 15-cv-3934, 2016 WL 3369541 (S.D.N.Y. June 17, 2016), Opp. at 15-16, is also unavailing. As explained in the opening brief, *Boelter* did not analyze the "benefit of the bargain" theory—because it never had to—and it does not hold that compliance with the law is part of every bargain. Motion at 8 n.3.

127 (Ill. App. Ct. 1998)). In *Mandziara*, which Plaintiffs described at the prior hearing as their "lead authority," Ex. A at 37:12-13, the court never discussed the meaning of "person aggrieved" and the opinion does not hold that one can be "aggrieved" without being harmed. *See* 701 N.E.2d at 134. The defendant sought mental health records without following the statutory procedures. *Id.* at 132-33. He tried to escape liability by claiming that *he* never saw the records. *Id.* at 133. The court rejected that argument because there was no question that he obtained the documents in violation of the statute, the court read them and, as a result, the plaintiff lost custody of her child. *Id.* at 134. The harm was not (as Plaintiffs allege here) that there was a technical violation. It was that information was disclosed (not alleged here) and that disclosure caused the loss of custody of a child (a concrete harm, not alleged here). *Id.*

Plaintiffs also cite cases that address "aggrieved" in the context of whether a party can seek appellate review, and a case that interpreted "aggrieved" under an Illinois statute concerning property injured by a joint owner. Opp. at 19. Each case confirms that "aggrieved" requires harm to a "personal or property right," which does not help Plaintiffs, as they have neither.

Finally, Plaintiffs quote a hearing transcript from *Rosenbach v. Six Flags Entm't Corp.*, 16 CH 13 (Lake County Ill., June 17, 2016). That court's reasoning is flawed (it ignored the "having been harmed" part of the dictionary definition of "aggrieved") and a federal judge has already rejected it. *McCollough*, 2016 WL 4077108, at *4 (court reviewed *Rosenbach* transcript and opinion but dismissed case for lack of Article III and statutory standing; legislature intended "persons aggrieved" to include "only persons having suffered an injury from a violation").

      **B.**    **Plaintiffs Are Not Within BIPA's Zone of Interests.**

The parties agree that the alleged harm must be within the statute's "zone of interest." Opp. at 16-17. But the only harm plaintiffs articulate—beyond the violation—is Mr. Vigil's

claim that he did not receive the benefit of his bargain.  Based on BIPA's purpose and intent, that is not the type of harm it was intended to prevent and thus falls outside of its zone of interests.

Plaintiffs claim that the Illinois legislature had "a general, unrestricted intent" to "prevent all of the evils that may result."  Opp. at 18.   In other words, Plaintiffs claim to have satisfied the "zone of interest" requirement because the zone has no limit.  Nothing supports the view that BIPA was intended to protect against "all evils."  To the contrary, the statute states the specific types of harms it addresses.  See, e.g., 740 Ill. Comp. Stat. 14/5(c) (discussing identity theft).  Someone who contends that they did not receive the benefit of their bargain in a financial transaction for a video game is not within that zone.

Take-Two is not arguing, as Plaintiffs claim, that their harm must fall within a particular setting (e.g., in a banking context).  Instead, the alleged injury and the alleged injured person must be the type of injury and person on which the Illinois legislature was focused.  Mot. at 14-15; see also Mgmt. Ass'n for Private Photogrammetric Surveyors v. United States, 467 F. Supp. 2d 596, 606 (E.D. Va. 2006) ("zone of interests" does not extend to everyone who suffers an injury in fact, "otherwise the test would be superfluous").

### III.     Plaintiffs Cannot Establish Class-Wide Standing.

Plaintiffs do not dispute that every class member must have Article III standing.  See Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir. 2006).  Unless the Court finds that mere statutory violations are sufficient to confer Article III standing, Plaintiffs' additional claimed injuries preclude any class from being certified.  The only claimed injury Plaintiffs defend is Mr. Vigil's claimed economic injury.  Thus, there is no need to wait for discovery or a full factual record because, on the face of the complaint, the claimed economic injury does not apply to the entire class.  Plaintiffs admit this by conceding that such injury applies only to Mr. Vigil and not to Ms. Vigil.

Instead, Plaintiffs argue that "class certification is 'logically antecedent' to the Article III standing of the individual class members." Opp. at 24. Not true. Under *Denney*, class certification is never "logically antecedent" to class standing because lack of standing is a *barrier* to certification. *See* 443 F.3d at 264. What Plaintiffs are really arguing is that they can revise their proposed class to include only people who, like Mr. Vigil, "would not have paid as much for the NBA 2k15 video game (or purchased it at all)." Opp. at 25. But that approach is a non-starter. The only way to create class-wide standing would be to define the class with reference to each purchaser's intent. Classes defined by such intent cannot be certified because membership would turn on individualized inquiries. *See, e.g.*, *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 44 (2d Cir. 2006), *decision clarified on denial of reh'g*, 483 F.3d 70 (2d Cir. 2007) ("Obviously, ascertaining each purchaser's intent would require an individualized determination."). Unless this Court reverses course and holds that a mere BIPA violation is sufficient for standing, no class can be certified based on the harm alleged.

## CONCLUSION

For the reasons above, Take-Two respectfully requests that the Court grant its the motion to dismiss. Alternatively, Take-Two requests that the Court strike the class allegations.

Dated:  September 2, 2016               Respectfully submitted,

                                        By: /s/ Robert M. Schwartz
                                               Robert M. Schwartz

KASOWITZ BENSON TORRES                  IRELL & MANELLA LLP
  & FRIEDMAN LLP                        Robert M. Schwartz (rschwartz@irell.com)
Jed I. Bergman (jbergman@kasowitz.com)  Victor Jih (vjih@irell.com)
Aaron H. Marks (amarks@kasowitz.com)    Nathaniel Lipanovich (nlipanovich@irell.com)
1633 Broadway                           1800 Avenue of the Stars, Suite 900
New York, NY 10019                      Los Angeles, CA 90067
(212) 506-1700                          (310) 277-1010

*Attorneys for Defendant Take-Two Interactive Software, Inc.*