UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANESSA VIGIL and RICARDO VIGIL, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>TAKE-TWO INTERACTIVE SOFTWARE, INC.,<br><br>        Defendant. | Civil Action 1:15-cv-08211 (JGK)(KNF) |

**<u>SUPPLEMENTAL BRIEF</u>**
**IN FURTHER SUPPORT OF MOTION TO DISMISS**
**THE SECOND AMENDED COMPLAINT**
**OR, IN THE ALTERNATIVE,**
**TO STRIKE THE CLASS ALLEGATIONS**

Pursuant to the Court's December 5, 2016, order, Dkt. No. 65, Defendant Take-Two Interactive Software, Inc. submits this brief regarding *Strubel v. Comenity Bank*, 2016 WL 6892197 (2d Cir. Nov. 23, 2016). In *Strubel*, the Second Circuit analyzed whether failure to comply with the Truth in Lending Act (TILA) constitutes concrete injury. 2016 WL 6892197. *Strubel* confirmed that, under *Spokeo*, a bare procedural statutory violation, divorced from any concrete harm, cannot satisfy the injury-in-fact requirement of Article III. *Id.* at *4. Thus, "in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest injury in fact." *Id.*

In plaintiffs' most recent Sur-Reply, they argued that this case does not involve procedural violations but intangible harms that the Illinois legislature purportedly elevated to new substantive rights. *See* Dkt. No. 61. Given that position, *Strubel* has no application to plaintiffs' claims and is of no help to their standing. As explained in defendant's response, the Illinois legislature did not create new substantive rights. *See* Dkt. No. 64. This is clear from the legislative history and from the structure of BIPA itself, which permits only persons actually aggrieved by a violation of BIPA to pursue a claim. *See, e.g., Aranda v. Caribbean Cruise Line, Inc.*, 2016 WL 4439935 at *5-6 (N.D. Ill. Aug. 23, 2016) ("Nothing in the statute suggests that the legislature believed a failure to have a formal retention policy or a failure to properly disclose that policy by themselves constituted 'new evils' that should be considered de facto injuries.").

Even if plaintiffs shift to a "procedural" theory, they still cannot establish Article III standing. As *Strubel* holds, a violation of a procedural right does not constitute a concrete injury unless: (1) Congress (or the Illinois legislature) has identified a concrete interest to be protected, and (2) a procedural violation results in harm or material risk of harm to that interest. 2016 WL 6892197 at *4. It is this connection—between the harm to the interest identified by Congress and the procedural violation—that satisfies Article III's injury-in-fact requirement:

> "[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." … Thus, in the absence of a connection between a procedural violation and a concrete interest, a bare violation of the former does not manifest injury in fact. But where Congress confers a procedural right in order to protect a concrete interest, a violation of the procedure may demonstrate a sufficient "risk of real harm" to the underlying interest to establish concrete injury without "need [to] allege any *additional* harm beyond the one Congress has identified."

*Id.* (internal citations omitted). The key is to start with the harm that the legislative body has identified. *See Aranda*, 2016 WL 4439935 at *5-6 (focusing on "congressionally-identified risk[s]" and the "harm[s]" Congress "intended to curb"). Plaintiffs cannot simply invent harms that may be implicated, argue for harms that they believe should matter, or assume that the harms at issue in TILA apply to BIPA. It is ultimately an inquiry into legislative intent, not a creative brainstorming exercise.

To apply this framework, the Second Circuit in *Strubel* first identified the stated purpose of the statute: "The TILA was enacted in 1968 to 'protect consumers against inaccurate and unfair credit billing and credit card practices' and promote 'the informed use of credit' by 'assuring a meaningful disclosure' of credit terms." 2016 WL 6891297 at *2 (citations omitted). With this in mind, the Second Circuit then analyzed whether any of the alleged violations of TILA harmed or posed a material risk of harm to those identified interests. The Second Circuit held that a failure to notify the consumer of *her* credit obligations created a material "risk of harm to the consumer's concrete interest in the informed use of credit" resulting in a concrete

injury, but that a failure to notify the consumer of the *creditor's* obligations did not.  *Id.* at *5, *8.[1]

In this case, the Illinois legislature identified "identity theft" and the "compromise[]" of biometrics as the concrete interests that BIPA was enacted to protect.  740 Ill. Comp. Stat. 14/5(c).  This makes clear that the collection, retention, and disclosure requirements of BIPA are procedural: they are designed to help prevent an Illinois resident's biometrics from being compromised or their identity from being stolen.  *See id.*; *id.* § 14/15(g) (BIPA is designed to promote the "public welfare, security, and safety."); *Aranda*, 2016 WL 4439935 at *5 (procedural statutes "require the adoption of procedures" to decrease the risk of harms).

There is, however, no link between any of *plaintiffs'* alleged BIPA violations *in this case* and any "actual or imminent, not conjectural or hypothetical," instance of compromised biometrics or identity theft.  *Strubel*, 2016 WL 6892197 at *3.  Plaintiffs do not, and cannot, allege that their biometrics have been or are likely to be compromised.  *See* 740 Ill. Comp. Stat. 14/5(c).  It is far from self-evident, for example, that the alleged failure to secure consent in "writing"—when the player otherwise knowingly scans his or her face to create an avatar to play

---

[1] A court is required to carefully describe the legislatively-identified harm.  In *Strubel*, the Second Circuit distinguished between the "informed use of credit" (which Congress identified) and a consumer's general interest in being informed (which Congress did not identify).  2016 WL 6891297 at *5-9.  The Second Circuit relied on that distinction to hold that a failure to inform consumers about the credit card company's obligation to respond to a billing error within 30 days did not confer standing: "While a consumer would undoubtedly appreciate prompt notification of such favorable action, it is not apparent how a creditor's failure to tell the consumer that he will be so advised, by itself, risks real harm to any concrete consumer interest protected by the TILA."  *Id.* at *8.

against others—materially risks identity theft.  It is equally unclear how the alleged failure to have a separate written retention and deletion policy risks the compromise of biometric information.  These are classic examples of alleged procedural violations that "might well cause no harm."  *Strubel*, 2016 WL 6892197 at *7.  As the Second Circuit emphasized, there must be a material "risk of real harm" to the "concrete interest" identified by the legislature.  *Id.* at *5.

Plaintiffs' allegations regarding BIPA are analogous to allegations that the *Strubel* court rejected for purposes of TILA.  The court noted that creditors have two distinct obligations—first, to have a billing error policy that complies with TILA and second, "to notify the consumer of the preceding obligation."  *Id.* at *8.  The Second Circuit held that failure to notify the consumer about a billing error policy may well cause no harm if the creditor otherwise properly responds to a reported billing error:  "It would be more than curious to conclude that a consumer sustains real injury to concrete TILA interests simply from a creditor's failure to advise of a reporting obligation that, in the end, the creditor honors.  Indeed, such a conclusion is at odds with a parallel scenario hypothesized by the Supreme Court to illustrate when a procedural error would 'result in no harm.'"  *Id.* (quoting *Spokeo*, 136 S.Ct. at 1550).

BIPA imposes the same standard.  Companies that deal with biometrics have both obligations to protect a consumer's biometrics, 740 Ill. Comp. Stat. 14/15(c)-(e), and obligations to notify consumers of the preceding obligations, 740 Ill. Comp. Stat. 14/15(a)-(b).  It would be "more than curious to conclude" that a consumer sustains real injury to concrete BIPA interests simply from an alleged failure to inform a consumer about the company's obligations to protect biometric information that, in the end, was protected.  *Strubel*, 2016 WL 6892197 at *8.  Finding that such a scenario results in a concrete injury would be "at odds" with *Spokeo*.  *Id.*  (Had BIPA been enacted to promote the "informed purchase of video games," this might be a different case,

but that is not the concrete interest the Illinois legislature identified in passing the law. *See* Dkt. No. 49 at 7-10 (discussing plaintiffs' "buyer's remorse" theory).)

Finally, the Second Circuit noted that speculative risks are not sufficient for purposes of Article III standing. *Strubel* specifically cites *Braitberg v. Charter Commc'ns, Inc.*, 836 F.3d 925, 930 (8th Cir. 2016), with approval and notes that the Second Circuit's analysis comported with the Eighth Circuit's analysis in *Braitberg*. *See* 2016 WL 6892197 at *8 n.15. In *Braitberg*, the plaintiff alleged that the defendant "violated a duty to destroy personally identifiable information" but failed to allege that the defendant "ha[d] disclosed the information to a third party" or "that any outside party has accessed the data." 836 F.3d at 930. Without those allegations, the plaintiff "identifie[d] no material risk of harm from the retention" and thus lacked standing. *Id.* Here, any risk of harm is even more remote.

Because plaintiffs allege procedural violations of BIPA that are divorced from any real risk of harm to a concrete interest identified by the Illinois legislature, plaintiffs have failed to allege a concrete injury and thus lack Article III standing. Accordingly, the Court should dismiss the SAC with prejudice.

Dated: December 8, 2016

Respectfully submitted,

By: /s/ Robert M. Schwartz
Robert M. Schwartz

KASOWITZ BENSON TORRES
  &amp; FRIEDMAN LLP
Jed I. Bergman (jbergman@kasowitz.com)
Aaron H. Marks (amarks@kasowitz.com)
1633 Broadway
New York, NY 10019
(212) 506-1700

IRELL & MANELLA LLP
Robert M. Schwartz (rschwartz@irell.com)
Victor Jih (vjih@irell.com)
Nathaniel Lipanovich (nlipanovich@irell.com)
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

*Attorneys for Defendant Take-Two Interactive Software, Inc.*